COLLINS *et al.* v. WAYNE LUMBER COMPANY, *Appellant.*

Division Two, May 21, 1895.

| 128 | 451 |
| 167 | 426 |
| 128 | 451 |
| 176 | ²225 |

1. **Practice:** REOPENING TRIAL. A defendant can not have the trial of a cause reopened at a subsequent term of the court in order to introduce evidence after having, on the trial, withdrawn his witnesses and informed the court that he would insist on his demurrer to the evidence which had been overruled.

2. **Sale:** SYMBOLIC DELIVERY: REPLEVIN. Symbolic delivery of personal property, as by bill of sale or warehouse receipt, is sufficient to vest title in the vendee and a right to maintain replevin therefor.

3. ———: CONTRACT: PASSING TITLE. In the absence of fraud, the title to lumber, cut in accordance with an agreement by plaintiff to buy the lumber cut by defendant's mill for a year, passed, as between the grantor and grantee, when the lumber was separately stacked, marked with plaintiff's initials, measured and a formal unconditional bill of sale was executed and delivered, though plaintiff still owed a residue on the lumber which was not to be paid until it was shipped.

*Appeal from Wayne Circuit Court.*—HON. J. F. GREEN, Judge.

AFFIRMED.

*C. D. Yancey* and *Dinning & Byrns* for appellant.

(1) The title does not pass where goods are sold and something besides mere delivery remains to be done by the vendor respecting the subject-matter of sale. Benjamin on Sales [2. Am. Ed], sec. 352. (2) Replevin can not be maintained in this state upon an executory contract of sale. *Boutel v. Warne*, 62 Mo. 350; Benjamin on Sales, sec. 99. (3) A bill of sale is neither under seal nor acknowledged. Wherein are they sacred? The court will construe these bills of sale with the contract out of which they grew, and of which they form a part, together with all the circumstances surrounding the transaction. *Brant v. Robertson*, 16 Mo. 145; *Desloge v. Ranger*, 16 Mo. 329. (4) In order to ascertain the intention of the parties the court will look not only to the deeds and writings, but to all the circumstances of the contract. *Hach v. Hill*, 106 Mo. 18; *Cobb v. Day*, 106 Mo. 278. (5) The intention of the parties, as is clearly manifested from all the testimony, was, notwithstanding the terms of the bill of sale, a mere "advance" on the contract price, and the intention of the parties must govern. *Groff v. Belche*, 62 Mo. 400; *Rickey v. Zeppenfeldt*, 64 Mo. 277; *Hall v. Hall*, 107 Mo. 101. (6) The court erred in refusing to hear defendant's evidence.

*M. L. Clardy* and *Dickson & Smith* for respondents.

(1) Where property is sold by bill of sale, which is unconditional in its character, the bill of sale is conclusive evidence of the title and terms of sale. Cobbey on Replevin, sec. 250; *McNail v. Zeigler*, 68 Ill. 224. (2) And can not be contradicted by parol evidence. *County v. Wood*, 84 Mo. 439; *Chrisman v. Hodges*, 75 Mo. 413; *Pearson v. Carson*, 69 Mo. 550; *Koehring v. Muemminghoff*, 61 Mo. 403; *Lumber Co. v. Warner*, 93 Mo. 374. (3) Symbolic delivery of property, as by bill of lading, order, or bill of sale, is sufficient to vest title, and right to maintain replevin. Wells on Replevin, secs. 194, 105 and 107; *Bank v. Dearborn*, 115 Mass. 221; Cobbey on Replevin, sec. 113; *Glasgow v. Nicholson*, 25 Mo. 29; *Traer v. Mullally*, 12 Mo. App. 568. (4) Replevin lies by person not having the actual possession of the goods when taken, provided he have at the time a general property and right of immediate possession. Cobbey on Replevin, sec. 143. (5) As between parties, the title to personal property passes by the delivery of a bill of sale. *Potter v. Gratiot*, 1 Mo. 368; *Schwartz v. Chappell*, 19 Mo. 304; *Locke v. Hedrick*, 24 Kan. 763; *Maddox v. Dabney*, 27 S. W. Rep. 901. (6) The uncontradicted testimony establishes a complete sale to respondents; appellant having executed and delivered bills of sale reciting the sale, delivery and marking of the property, and having transferred to respondents policies of insurance on the property, and having separated, stacked and marked the lumber. *Hamilton v. Clark*, 25 Mo. App. 428; *York v. Railroad*, 15 Mo. App. 598; *Ober v. Carson's Ex'r*, 62 Mo. 209; *Benjamin on Sales*, *p. 255 *et seq.*; *Rickey v. Zeppenfeldt*, 64 Mo. 277; *Dowell v. Taylor*, 2 Mo. App. 329; *Groff v. Belche*, 62 Mo. 400; *State ex rel. v. Knapp*, 13

Mo. App. 467; *Nance v. Metcalf*, 19 Mo. App. 183; *Mueller v. Guye*, 12 Mo. App. 589; *Toney v. Goodley*, 57 Mo. App. 235; *Sanders v. Bresnahan*, 53 Mich. 567. (7) Giving of the redelivery bond admits that the property was taken from defendant, and was in its possession at the time of the commencement of suit. *Carpenter v. Stearns*, 32 Mo. App. 132; *Schnaider Brewing Co. v. Niederweiser*, 28 Mo. App. 236; *Miller v. Bryden*, 34 Mo. App. 602. (8) To avoid circuity of action, plaintiff, in an action of replevin, recovers only to the extent of his interest. *Groff v. Belche*, 62 Mo. 400; *Gregory v. Tavenner*, 38 Mo. App. 627; *Baldridge v. Dawson*, 39 Mo. App. 531; *Burt v. Mears* 41 Mo. App. 232; *Boutell v. Warne*, 62 Mo. 350. (9) The settled doctrine in Missouri is that an appellate court will not review the facts for the purpose of weighing the evidence, or for the purpose of passing on mere preponderance of testimony. Finkelnburg on Appellate Practice, p. 110.

GANTT, P. J.—This is an action of replevin commenced by Calvin F. Collins, W. D. Brewer and Frank C. Brewer, dealers in lumber under the name of C. F. Collins & Company against the Wayne Lumber Company, a corporation, engaged in manufacturing lumber at Clearwater, in Wayne county, Missouri.

The petition, affidavit and bond for the replevin are in the usual form describing two million, six hundred and eighty-six thousand, four hundred and ninety-two feet of yellow pine lumber, by the number of pieces of each size and dimensions in one hundred and forty-six piles of lumber, marked "C. & Co." in the mill yards of the defendant at Clearwater. An order of delivery was duly issued and the sheriff made his return thereto certifying that he had siezed one hundred and thirteen stacks of lumber and delivered six

car loads amounting to seventy-one thousand, two hundred and twenty-two feet to the plaintiffs, and returned the remainder to the defendant upon its giving a delivery bond, which bond he returned into court.

The answer was, *first,* a general denial; *second,* that, on February 15, May 5, and June 3, 1891, plaintiffs "by covin and deceit" had obtained from defendant bills of sale, embracing a large amount of lumber *then manufactured* and in stock at defendant's yards at Clearwater, purporting to be conveyances and delivery of the lumber therein described, when in truth and in fact said bills of sale were understood and intended to be only an equitable lien to secure the sum of $5 per thousand feet advanced on said lumber by plaintiffs under a contract of November 7, 1890, until said lumber should be shipped out on the orders of plaintiffs, when plaintiffs should pay the balance due to defendant on the fifth day of each month for the previous shipments; that plaintiffs had not complied with their contract by refusing to advance money at the rate of $5 per thousand feet for the lumber cut under said contract and were now fraudulently asserting title under said bills of sale; *third,* defendant averred it was the sole and absolute owner of said lumber, asked for its return, and prayed damages for its detention.

Defendant also set up two counterclaims, one for its loss on seven millions of feet of lumber by it cut and stacked as by its contract of November 7, 1890, it had agreed, which plaintiffs had refused to order and advance the $5 per thousand feet and the second was for $90 for one car load of lumber shipped to plaintiffs in June, 1891. The replication was a general denial. At the trial, defendant dismissed its two counterclaims.

Both parties waived a jury and the cause was tried to the court. W. D. Brewer, one of the plaintiffs, having died since the commencement of the action, his death was duly suggested and the petition was amended and the action continued in the name of C. F. Collins and F. C. Brewer, as surviving partners. Defendant refiled its original answer.

The controversy originated in a contract entered into between the parties on November 7, 1890, which is in these words:

"CLEARWATER, Mo., Nov. 7, 1890.

"This agreement made and entered into this seventh (7th) day of November, 1890, between the Wayne Lumber Company and C. F. Collins & Co., to wit:

"The Wayne Lbr. Co. agree to sell the cut of their mill at Clearwater, Mo., for the year 1891, loading same on cars, as ordered, and at prices as shown by list on reverse side of this sheet.

"That they will furnish stock sheet the first of each month showing stocks on hand.

"The goods to be well manufactured and to standard grades, and shipments to have proper attention and the filling of orders to the best advantage and with as little delay as possible.

"The stock to be cut as nearly to saw bill, as furnished by Collins & Co., as practicable.

"Payments to be in cash on the 5th of each month for the previous month's shipments.

"Provided C. F. Collins & Co. agree to advance five ($5.00) dolls. per M. on such part as the Wayne Lbr. Co. may want on the stock on hand at any time, the Wayne Lbr. Co. agreeing to give bill of sale on all stock in stack at time advance is made; to have same insured and assigned and pay 3 1-2 per cent. per annum on such money advanced.

"Any badly mixed special house or barn bills carrying a large number of items shall be charged at 50c. per M.                "WAYNE LUMBER Co.,
                            Per D. M. Storrs."

And on the reverse side of said contract are the following words and figures:

## "YELLOW PINE LUMBER.

PRICE LIST OF

### C. F. COLLINS & CO.,

WHOLESALE DEALERS.

Room 522 Keith & Perry Building.                KANSAS CITY, Mo.

| | 1st and 2d Clear. | Star. | Common. |
|---|---|---|---|
| **FLOORING.** | | | |
| ⅞ or 1³⁄₁₆x4 inch.................................. | 16.00 | 14.00 | 10.00 |
| 1³⁄₁₆x6 inch. ................................... | 16.00 | 14.00 | 10.00 |
| 1¼x4 or 6 inch .............................. | 17.50 | 15.50 | 11.50 |
| **CEILING.** | | | |
| ½x4 or 6 inch.................................... | 13.50 | 12.00 | 8.00 |
| ⅝x4 or 6 inch..................................... | 14.50 | 13.00 | 8.00 |
| ¾x4 or 6 inch.................................... | 16.00 | 14.00 | 9.00 |
| Partition and Corrugated Ceiling $2.00 more than regular Ceiling, same thickness and grade. Drop Siding $1.00 more than Flooring. | | | |
| **SIDING (Bevel.)** | | | |
| From 1 inch stock. .................... | 10.50 | 9.00 | 7.50 |
| **FINISHING, S. 2 S.** | | | |
| 1x4 and 6 inch. ..................... | 16.00 | 14.00 | 10.00 |
| 8, 10 and 12 inch. ...................... | 17.00 | 14.00 | 10.00 |
| 1¼x6, 8, 10 and 12 inch.................. | 18.00 | 14.00 | 10.00 |
| 1½x6, 8, 10 and 12 inch................ | 18.00 | 14.00 | 10.00 |
| 2x6 to 2x12 inch........................ | 18.00 | 14.00 | 10.00 |
| For wider than 12 inch add $2.00 per M. | | | |
| **MOULDED CASING AND BASE.** | | | |
| From 3, 4, 5 & 6 in. Stock B. M. | Rough finish, $1.00 per M less. | | |
| From 8, 10 & 12 in. Stock B. M. | | | |
| ⅞ x 4 and 6 S 4 S, plain B. M. | | | |
| Mouldings per Universal Moulding Book, 50 per cent. discount. | | | |

*Left margin (vertical):* WE HAVE A WELL ASSORTED STOCK AND CAN SHIP PROMPTLY.

We have several mills in our combination. Send your orders direct to this office, that we may place them where they can be shipped promptly.

Collins v. Wayne Lumber Co.

COMMON BOARDS.—S. 1 S.

1x8, 12 to 20 feet, Rgh ............... 8.50  S. 1 S .... 9.25
1x10, 12 to 20 feet, Rgh... ......... 8.50  S. 1 S..... 9.25
1x12, 12 to 20 feet, Rgh............. 9.50  S. 1 S.....10.25
Shiplap or D. and M. Boards add 50 cents per M.

FENCING.—S. 1 S.

| 1x6 16 feet ... . | | |
| 1x6 other lengths | Rgh ........... 8.50 | |
| 1x4 16 feet...... | S. 1 S......... 9.25 | |
| 1x4 other lengths | | |

DIMENSION.—S. 1 S. AND 1 E.

|  | 10 to 20 ft. | 22 and 24 ft. |
|---|---|---|
| 2x4, 2x6 and 2x8  Rgh... ..... ...... . | 8.50 | 9.25 |
| 2x10 and 2x12¾  S. 1 S., 1 E.............. | 9.25 | 10.00 |
| 2x14 and ........Rgh.... 9.25  S. 1 S., 1 E. | 10.00 | |
| 4x4 and 4x6.....  Rgh................... .. | 8.50 | |
| 6x6 to 8x8, Rgh..  S 4 S ...... . ....... | 2.00 | |
| 8x10 to 12x12, Rgh | | |

For 16 in. Joists add $2.00 per M to 2x14.
Add for lengths over 24 ft., $1.00 for every 2 ft. additional.

*COMMUNICATIONS ANSWERED PROMPTLY. CORRESPONDENCE SOLICITED.*

*ROUGH ADD PER M.*

*No. 2 $2.00 less per M.*

*WE HAVE THE BEST CYPRESS SHINGLES IN THE MARKET.*

Kansas City, Mo.,
"Prices quoted in this List are delivered at Your Station. We are in Line. Good Goods and Prompt Shipments. Please put date and number of list on orders.

"Any stock cut specially for St. Louis market to be stacked 50 cents per M extra. Any stock cut special and to be kiln dried, 50 cents per M extra."

Plaintiffs, to maintain their case, offered and read in evidence, over the objections of defendant, three several bills of sale. The first was as follows:

"CLEARWATER, MISSOURI, Feb'y 15, 1891.

"We have this day sold, marked and delivered to C. F. Collins & Co., St. Louis, Mo., the following piles of lumber in our yard at Clearwater, Mo., as follows:" (Here follows a minute description by size, dimensions and number of pieces) "the total aggregating 1,196,268 feet of lumber in 75 piles; said above described lumber

to be loaded according to their orders, more fully expressed in a certain contract between us and said C. F. Collins & Co., dated November 7th, 1890. On the above mentioned sale we have received of said C. F. Collins & Co., this 15th day of February, 1891, five thousand dollars ($5,000) for which we are to pay them 3 1-2 per cent. per annum for 6 mos. from date.

"THE WAYNE L' Co'

(L. S.)            "By D. M. Storrs, Presd't.

"GEO. A. WITHERS, Sec't'y."

The second bill of sale was as follows:

"We have this day sold, marked and delivered to C. F. Collins & Co., St. Louis, Mo., the following piles of lumber in our yard at Clearwater, Mo." (Here follows detailed account of lumber) "total amount of feet in 115 piles, 1,792,911.

"Said above described lumber to be loaded according to their orders more fully expressed in a certain contract between us and said C. F. Collins and Co., dated Nov. 7, 1890. On the above mentioned sale we have received of said C. F. Collins & Co. $5,000 Feby 15, 1891, and $4,000 this 5th day of May, 1891, for which we are to pay them 3 1-2 per ct. per annum from receipt till payment.            WAYNE L. Co.

"Per D. M. Storrs, Pres.

"H. C. WITHERS, Treas."

The third bill of sale was of date June 3, 1891; in the same form; the total amount of lumber described in it was one hundred and thirty-four piles, containing two million, six hundred and eighty-six thousand, four hundred and ninety-two feet, in which the company recites that on the above mentioned sale it had received of C. F. Collins & Company $5,000, February 15, 1891; $4,000 May 5, 1891, and $4,400 June 3, 1891, and they are to pay 3 1-2 per ct. on the same per annum from receipt till paid.

Plaintiffs also offered evidence tending to prove that plaintiffs had ordered lumber of defendant which it had failed to ship according to contract; that they had refused orders, claiming they had verbal understandings on different questions that came up; that Mr. Collins had said to Mr. H. C. Withers, the treasurer of the company, who was there, that before making further advance payments on lumber cut during the month of June, he wished an understanding of those differences which he had claimed from time to time, and which had been coming up every month, "that we would all get together and talk it up;" that he only knew the contract; that was all he could go by; that he was ready and willing to make the payments by the contract, but he must have an understanding of the differences, and that they must be adjusted; that the only difference was fifty cents a thousand on lumber which he claimed more than the contract price; also that his copy of the contract was different from the defendant's and there were also orders sent him that had not been filled; that F. C. Brewer had gone in person to Clearwater and made demand on Mr. Storrs, the president, and Mr. Withers, the secretary and treasurer, of defendant, for the lumber described in their several bills of sale and they refused to permit him to go near it; that the title to the lumber was in plaintiffs, and they only owed a balance over and above the $5 paid cash, when they should get the lumber; that upon the refusal to deliver the lumber they commenced this action.

At the close of plaintiffs' case, defendant offered a demurrer to the evidence which was, by the court, overruled.

Thereupon defendant called as a witness Harry C. Withers, who, being duly sworn, testified as follows:

"*Q.* State your name, age, residence and occupation. *A.* My name is Harry C. Withers. I reside at Clearwater, Wayne county, Missouri. I am treasurer of the Wayne Lumber Company."

After the hearing of the foregoing testimony of witness, Harry C. Withers, Mr. Yancey, of counsel for the defendant, stated to the court that defendant would enter a dismissal as to the two counterclaims set up in defendant's answer, and that defendant would insist upon the demurrer to the testimony offered. Whereupon the witness, Withers, was withdrawn from the stand.

Mr. Yancey, of counsel for defendant, thereupon stated to the court, "that he desired to go to his office to procure some authorities and desired to argue the case as made." "Whereupon the court remarked to counsel that if no further testimony was offered, and that counsel intended to insist upon the demurrer to the testimony, the court would withhold its ruling upon the demurrer to the testimony, and pass upon the demurrer in passing upon the whole case."

Thereupon the case was argued by both sides and at the conclusion the court took the case under advisement until the next term. On the first day of the next term, counsel for defendant asked leave to offer evidence then or at such time as might suit the court, which request the court refused, stating at the time that in the opinion of the court the case had been finally submitted by both parties on the hearing in September, 1892, to which action defendant excepted at the time. The court thereupon announced its decision.

And the court, on the same day and immediately, entered final judgment in favor of the plaintiffs and against the defendant, the Wayne Lumber Company and Douglas M. Storrs, George A. Withers, H. C. Withers, Elizabeth Allen, executrix of the estate of D.

J. Allen, deceased, and John M. Bryden, finding and fixing the value of the property in question at the sum $19,360 and that the same, at the institution of this suit, belonged to plaintiffs, and that they were entitled to the possession of the same; and rendering judgment for the return of said property, or said sum of $19,360 at the option of the plaintiffs. To which finding and judgment of the court the defendant, then and there, at the time, objected and excepted.

On the motion for rehearing, the court announced from the bench that if plaintiffs would remit $5,960 of said judgment he would overrule the motion, otherwise sustain it. Plaintiffs thereupon entered a remittitur of $5,960, and the court overruled the motion. In due time an appeal was perfected to this court.

I. The first, second, third and ninth assignments are based upon the action of the court in refusing to reopen the case in February, 1893, and allow defendant to introduce evidence. The contention of counsel that injustice was done them in not reopening this case, is somewhat remarkable. The cause had been set down specially for hearing, all parties were present, the plaintiffs' case was all in, a demurrer to the evidence overruled, the defendant had begun its testimony and one of its witnesses partially examined, whereupon, without suggesting that defendant was unable to proceed for any cause, the record recites, that counsel for defendant withdrew his witness, and voluntarily dismissed his two counterclaims and advised the court that defendant would insist upon its demurrer to the testimony. No right to introduce evidence at a later day was asked or mentioned, but counsel stated he desired to argue the case as made, whereupon the court remarked to the counsel that if no further testimony was offered, and if counsel intended to insist upon the demurrer, the court

would withhold its ruling upon the demurrer to the testimony and pass upon it with the whole case.

To claim now that under such a state of the record counsel understood they were being accorded the right to argue the demurrer only, and, if decided adversely to them, they could then offer their evidence, is an unwarranted construction of the record before us. There is no reasonable foundation for such a position. The record indicates as plainly as language can that, notwithstanding the court had already overruled the demurrer, inasmuch as it then understood that all the evidence on both sides was in, it would simply recall that and decide it along with the whole case, which was then submitted. We think the position assumed is without precedent, and certainly has nothing to commend it since not the slightest reason was assigned why the evidence was not offered at the time and place selected for hearing it, nor is there any intimation that anything new has been discovered, or that defendant was surprised by anything offered by plaintiff in September. Moreover, defendant did not wait until the demurrer was overruled, but offered to introduce this evidence before the court passed upon it.

The trial courts must dispose of their time and business with a view to the public interest, and it must be an extreme case which will require interference with their discretion in that regard. This court will not interfere with the discretion of the trial court in excluding evidence offered out of time. *State v. Smith*, 80 Mo. 516; *State v. Richardson*, 117 Mo. 586. The record disproves the charge that the court denied defendant the right to introduce its evidence.

II. As the defendant withdrew its counterclaim for $90 and there was not a word of evidence offered to sustain it, the court manifestly committed no error in not crediting defendant with it in the replevin suit.

III.   There was likewise no evidence of the value of the seventy-one thousand, two hundred and twenty-two feet of lumber turned over by the sheriff to respondents.   The claim now made that it was worth $1,750 is not supported by the proofs; there is no evidence either as to the dimensions or value of this lot of lumber.   The history of the proof on this question is this:   The witness Brewer presented the court with a schedule of prices showing what all the lumber seized by the sheriff was worth.   This estimate included the seventy-one thousand, two hundred and twenty-two feet, and tended to prove the aggregate value of all the lumber levied on was $25,663.64.   The court after making all allowances, at first, rendered a judgment for plaintiff for $19,360.   Subsequently on the motion for new trial, the respondents, taking the view that under the decisions of this court they were entitled to recover in replevin to the extent of their actual interest, and having elected to take a money judgment, consented to remit all exceeding their interest in the lumber.   The evidence shows advances in cash to the amount of $13,400, exclusive of interest, which the evidence all shows defendant agreed to pay, and it must be presumed the court took these items into consideration in making up its judgment, and it might well have found that the lumber turned over to plaintiffs would not exceed the interest on the sums advanced on the purchase money.

IV.   The other assignments as to the admission of evidence are abandoned in this court.   It only remains to be considered whether plaintiffs were entitled to recover at all.

No instructions were asked or given, and we can only ascertain defendant's theory, by the argument in the brief, and that is that plaintiffs only had "an executory contract in and for the lumber, and, there-

fore, the title to the same never passed." The con-
tract of November 7, 1890, clearly established an agree-
ment to sell plaintiffs the whole "cut," of defendant's
mill at Clearwater for 1891. A sale and a purchase
were unquestionably contemplated. Plaintiffs were to
advance on their purchase $5 per thousand feet on the
stock on hand, and the lumber company agreed to give
a bill of sale on all stock in the stacks at the time the
advance was made. So far the contract was execu-
tory, but when the lumber was sawed, separately
stacked, and marked with Collins & Company's ini-
tials, and the stipulated advance payment of $5 per
thousand feet paid down, and a formal unconditional
bill of sale made and delivered to plaintiffs, reciting
that this manufactured lumber so stacked to itself was
"sold, marked and delivered," then it became an
executed sale, and the title passed to plaintiffs notwith-
standing they owed the last payment, or unpaid bal-
ance of the purchase money when the lumber should
be shipped out on the cars. The whole agreement
indicated a sale and not a mere mortgage or equitable
lien.

Plaintiffs were lumber merchants. They were buy-
ing stock for their business. They were not bankers
or commission merchants merely making a loan, but
purchasers. When it is considered that Mr. Collins'
evidence was not contradicted by any witness but was
corroborated to the fullest extent by the bills of sale,
to the effect that when the money was advanced it was
intended as a sale, and when he explains that defend-
ant agreed to pay his interest because lumber was
ordinarily sold on sixty days' time and as defendant
required the money in advance, it agreed to pay plain-
tiffs the three and one half per cent. for the use of
their money until it would be due, it is obvious that

this alone will not constitute the transaction a mortgage and the bills of sale were sufficient to support the replevin.

Symbolic delivery of property as by bill of sale or warehouse receipt is sufficient to vest title and a right to maintain replevin. *Glasgow v. Nicholson*, 25 Mo. 29; *Traer v. Mullally*, 12 Mo. App. 568; *Bank v. Dearborn*, 115 Mass. 221; Cobbey on Replevin, sec. 113; Wells on Replevin, secs. 194, 105, 107.

As between the vendor and vendee, no question of fraud being raised on the record, when this lumber was separately stacked, marked with Collins & Company's initials, and measured, and a formal unconditional bill of sale was executed and delivered to plaintiffs the title to the lumber passed, notwithstanding plaintiffs still owed a balance which was to be paid when they shipped the lumber out of Clearwater. *Swartz v. Chappell*, 19 Mo. 304; *Locke v. Hedrick*, 24 Kan. 763; *Cleveland v. Williams*, 29 Texas, 205; *Epstein v. Drug Co.*, 82 Texas, 572. No other delivery was necessary to complete the same.

As to the claim set up that the whole transaction was a mere equitable lien it is not necessary to decide whether any evidence could be admitted to vary the nature of these instruments, as not one word was offered to substantiate that theory, nor is there a syllable to make good the allegation that these bills of sale were obtained by "covin and deceit;" on the contrary they were voluntarily executed in southeast Missouri and mailed to plaintiffs at St. Louis in pursuance of the previous written agreement. There was much evidence to sustain the plaintiffs' case and nothing whatever in rebuttal, and, accordingly, we affirm the judgment. BURGESS and SHERWOOD, JJ., concur.