## ROE v. BANK OF VERSAILLES, Appellant.

### Division Two, March 11, 1902.

1. **New Trial: ORDER: STATEMENT OF GROUNDS: APPEAL.** Where the trial court, in granting a motion for a new trial, failed to specify the ground on which its action was based, as required by Revised Statutes 1899, section 801, its action can not be assumed to have been based on any particular ground, but the ruling will be tried on appeal, as prior to the new statutory rule, by looking into the correctness of the rulings below in admitting or rejecting evidence and in giving instructions.

2. **Evidence: OBJECTION: HARMLESS ERROR.** Where, in an action against a bank for damages to plaintiff's business and credit consequent on the bank's refusal to honor checks drawn by plaintiff on it, the court permitted the same inquiry to be pursued to its fullest extent, the previous exclusion on defendant's objection of plaintiff's testimony as to the extent of the injury done him in his business by the refusal to honor his checks is harmless error. (Overruling State v. Grate, 68 Mo. loc. cit. 28.)

3. ————: ————: **NO SPECIFIC GROUND: INSUFFICIENT.** An objection to a question that it was incompetent, irrelevant, and immaterial, without stating any specific ground, is insufficient to raise the objection that the evidence related to a matter not in issue.

4. ————: ————: **OVERRULED: NO EXCEPTION: UNAVAILABLE ON APPEAL.** An objection to a question asked a witness is of no avail on appeal, where no exception is taken upon the overruling of the objection.

5. ————: **BANK'S REFUSAL TO HONOR CHECKS: WITNESS: VALUELESS TESTIMONY.** In an action against a bank for damages to plaintiff's business and credit, consequent on the bank's refusal to honor his

Roe v. Bank of Versailles.

checks, a witness was asked if he understood from any source or in any way, or whether he got information from any one that the credit plaintiff had in his stock business was on account of the defendant furnishing him money, and whether plaintiff's credit in that community was based upon that fact, and replied that he might have heard it indirectly, but he did not know; it might have had something to do with it. *Held*, that neither the questions nor answers could have worked plaintiff any hurt, as the witness showed a wholesale ignorance on the subject.

6. ———: HEARSAY. The questions called for and the answers constituted hearsay.

7. ———: UNDERSTANDING OF WITNESS. What the witness understood was not evidence.

8. ———: SURETY ON NOTE: PAYEE: PROTEST. It was proper to refuse to permit a surety for plaintiff on a note to state whether the payee said anything to plaintiff about his checks being protested, when the matter was fixed up.

9. ———: MOTION FOR SECURITY FOR COSTS: INSOLVENCY: IRRELEVANCY. It was proper to refuse to admit in evidence the motion filed by defendant to require plaintiff to give security for costs, for the purpose of showing that the plaintiff was insolvent, and that defendant admitted it; for such insolvency was of the time of bringing the suit, and bore no relevancy to the issue joined.

10. ———: FINANCIAL CONDITION OF PLAINTIFF. Plaintiff having been permitted to show his financial condition after the protest of his checks, no possible injury accrued to him by the refusal to admit the motion in evidence.

11. ———: PAROL: BANK CASHIER: BANK BOOKS. It was competent to prove by parol, through the cashier, that plaintiff had been doing business with the bank prior to a certain date, instead of resorting to the bank books for that purpose.

12. Bank: PRESIDENT: AUTHORITY TO MAKE AGREEMENT. The president of a bank is authorized to make an agreement whereby a party is to get money from the bank to buy a certain description of hogs.

13. ———: ———: AUTHORITY TO MAKE LOAN: BORROWER: ESTOPPEL. A person borrowing money from a bank through its president, can not deny the authority of the president either to loan the money to him or to dictate the terms of such loan.

14. ———: ———: ———: ESTOPPEL OF BANK. Where a bank permits its president as its agent to arrange a loan of money for the pur-

chase of stock, it is estopped to afterwards deny the legitimate nature of the loan.

15. ———: LOAN: PRESUMPTION OF KNOWLEDGE AND APPROVAL. Where the books of a bank show that a certain loan was made, and there is no countervailing evidence, it will be presumed that the nature and character and all the essential features of the loan were known to the bank; and, no disapproval of the loan appearing, it will be further presumed that the bank approved of the loan.

16. ———: ———: UNAUTHORIZED ACT OF PRESIDENT: RATIFICATION: ESTOPPEL. Though the act of a bank's president in arranging for a loan of money for the purchase of stock is unauthorized, yet, if the loan is afterwards ratified by the bank, the bank can not subsequently question its legitimate character.

17. ———: ———: EVIDENCE: CONDITION OF CREDIT. Where the president of a bank made an agreement with a party whereby such party was to get money from the bank to buy a certain description of hogs, he is competent to testify of the kind of hogs which the party was to buy under the terms of the contract as a condition of getting credit at the bank.

18. Evidence: BANK BOOK ENTRIES. It is proper to admit in evidence the entry from a bank journal showing the amount paid on a note payable to the bank.

19. Appellate Practice: ABSTRACT: OMISSION: RESPONDENT'S DUTY: RULE OF COURT. Where a note is not contained in defendant's abstract on his appeal, so that it can not be ascertained whether there was a credit on the note or not, plaintiff, if he desired to supply the omission in defendant's abstract and make the note and its lack of credit prominent, should have complied with Supreme Court rule 11, by filing an additional abstract covering the omission, instead of by making a similar statement in his brief.

20. Evidence: NO OBJECTION: EXCLUSION. Where a party makes no objection to the admission of testimony, it is too late afterwards to move its exclusion.

21. ———: REFUSAL TO STRIKE OUT: NO EXCEPTION: APPEAL. Whether the trial court erred in refusing to strike out evidence can not be considered on appeal, where no exceptions were saved to such ruling.

22. Deposition: OBJECTION: APPEAL: NOT OPEN FOR REVIEW. Where no exception was saved to the overruling of an objection to a deposition, the point is not open for review on appeal.

23. ———: IMMATERIALITY: OVERRULING OBJECTION: NO ERROR. Where a witness making a deposition did not testify to anything material to the issues in a case, there was no prejudicial error in overruling an objection to his deposition.

24. **Action Against Bank:** DAMAGES: REFUSAL TO HONOR CHECKS: OFFER TO BUY PLAINTIFF'S CLAIM: IMMATERIAL EVIDENCE. In an action against a bank for damages to plaintiff's business and credit, consequent on the bank's refusal to honor his checks, evidence as to whether or not a person offered to buy plaintiff's claim against the bank is wholly immaterial and foreign to the issues, and an objection to asking plaintiff in regard to the person making him such offer is well taken.

25. ———: ———: ———: ———: IMPEACHING TESTIMONY: COLLATERAL ISSUE. Though the person alleged to have made the offer had denied that he ever tried to buy plaintiff's claim against the bank, evidence of plaintiff that he had made such an offer is not admissible for the purpose of impeaching such person's testimony on that point; it being on a collateral issue on an impertinent matter.

26. **Practice:** TESTIMONY AFTER CASE CLOSED: TRIAL COURT'S DISCRETION. It is entirely discretionary with the trial court whether a witness, after the evidence is closed, shall be permitted to again occupy the witness stand.

27. **Note:** APPLICATION OF DEPOSITS: PAROL EVIDENCE. Parol evidence is competent to show that, at the time a note was given to a bank, the maker directed that any deposit he should thereafter make should be credited on the note, although before its maturity, for it did not in the least vary or contradict the note.

28. ———: ———: WRITTEN AGREEMENT UNNECESSARY. An agreement by the maker of a note to a bank that any money thereafter deposited by him in the bank shall be credited on the note, although before its maturity, need not be in writing.

29. **Action Against Bank:** DAMAGES: REFUSAL TO HONOR CHECKS: CASE STATED. In an action against a bank for damages to business and credit, consequent on the bank's refusal to honor checks, it appeared that plaintiff was a stock dealer, and obtained money from the bank from time to time on his checks to enable him to purchase hogs suitable for the market, the proceeds of which, when sold, were deposited in the bank to meet his overdrafts, and that to meet a large overdraft plaintiff executed a note for a portion thereof payable within a certain time. There was evidence that at the time the note was given plaintiff expressly directed the cashier of the bank to apply the deposits that might be made from time to time, as the hogs

should be sold, as a credit on the note, notwithstanding it might not be due when the sales were made. *Held,* that it was proper to instruct that if the above facts were so, and afterwards and before the maturity of the note the bank received money from plaintiff, which was credited on the note, and plaintiff had no other money in the bank at the time of the protest of his checks, then the verdict should be for defendant.

30. Instruction: CONFLICTING: AFFIRMANCE OF JUDGMENT. An erroneous instruction, given at the instance of a party, furnishes him no basis for an affirmance of the judgment granting him a new trial, notwithstanding such instruction is in conflict with those given for the other party.

31. Note: APPLICATION OF DEPOSITS: DIRECTION OF DEPOSITOR: ESTOPPEL. Where the maker of a note to a bank agreed that deposits thereafter made by him might be applied on the note, though it was not due when such deposits were made, and directed the cashier to so apply the deposits, he is estopped from claiming such deposits as subject to his checks.

Appeal from Morgan Circuit Court.—*Hon. D. W. Shackleford,* Judge.

REVERSED AND REMANDED *(with directions).*

*Ross & Bohling* and *W. M. Williams* for appellant.

(1)    The lower court wholly failed to specify of record the ground or grounds upon which the new trial was granted, as expressly required by the statute in such cases. R. S. 1899, sec. 801; Candee v. Railroad, 130 Mo. 153. (2) Plaintiff was not entitled to a new trial on the ground that error was committed in the admission or exclusion of evidence. A simple examination of the record will make it manifest that the rulings in this regard can not be complained of by plaintiff. An objection by defendant, to an inquiry concerning the effect the protest of the checks had upon plaintiff's business and credit, was sustained. The same witness, however, was permitted both before and after these objections were sustained to go into great detail upon that subject. Every phase of

the question was fully developed. Nothing was excluded by this ruling. Plaintiff simply changed the form of the question and obtained the evidence he desired. The exclusion of evidence at one time, if admitted at another, is not reversible error. Reardon v. Railroad, 114 Mo. 402; Hollmann v. Lange, 143 Mo. 107. (3) The ruling in regard to information possessed by witness did not injure the plaintiff. His objection to the question was overruled, but the witness answered that he had no information upon the subject inquired about. (4) Plaintiff asked one of his witnesses whether Feaster said anything to Roe about his checks being protested, when he called on Roe to pay a debt due Feaster. It does not appear what the answer of the witness would have been, nor that the evidence sought to be elicited would have been material. "No offer was made to show, nor does it in any manner appear that the answer would have tended to support plaintiff's case or theory on the point to which the question was aimed." Morton v. Heidorn, 135 Mo. 615; Bank v. Aull, 80 Mo. 199; Cracksberger v. Roiter, 91 Mo. 404. The evidence sought was merely hearsay, in addition. (5) The motion for security for costs referred to plaintiff's financial condition at the time of the suit. It did not tend to establish any issue involved in the merits of the case. It was properly excluded. Plaintiff was, however, permitted by other evidence to show his financial condition after the protest of his checks; and in no event was he injured by the exclusion of this paper. (6) The objection that the president could not contract for the bank concerning a loan to one of its customers, and that the cashier only could do that, was not well taken. (7) The conversation between plaintiff and the president of the bank, about the kind of hogs plaintiff was to buy, was properly admitted. Certainly, plaintiff was not harmed thereby. (8) There was no error in admitting the journal entry, showing that $267.71 had been applied on plaintiff's note. The witness had already testified to that fact. (9) The

statement of Feaster in regard to plaintiff's credit, which the court refused to strike out, was directly in line with the testimony offered by plaintiff. (10) An objection to a question was sustained, but the same evidence was elicited from the witness at a different time, and this did not constitute ground for a new trial. (11) Plaintiff made a general objection to all the evidence contained in Callison's deposition. "In this case many items of testimony contained in the depositions are grouped together, and a general objection made to their being admitted to the jury, with no specific reason assigned why any particular item of such evidence should not be permitted; in such case it was not incumbent upon the trial judge to fish out incompetent evidence, if any there was in the mass objected to, with a hook and line of his own." Parsons v. Railroad, 94 Mo. 292. (12) The question asked plaintiff, whether Feaster did not offer to buy his claim against the bank after the checks were protested, was not proper evidence for any purpose. Feaster, a witness for defendant, was asked the same question, and presumably this was intended for the purposes of impeachment. "The rule that the proof of contradictory statements goes to the credibility of the witness does not extend so far as to introduce previous expressions of opinion by the witness." McFadden v. Catron, 120 Mo. 263. (13) It was within the discretion of the trial court to permit the witness, Stephens, to be recalled after the case was closed, for the purpose of making explanation of his previous testimony. Miller v. Railroad, 64 S. W. 141. (14) Parol evidence that at the time the note was executed, plaintiff directed any deposit thereafter made by him to be credited on the note before its maturity, did not vary or contradict the note, and had no tendency so to do. A distinct, collateral, contemporaneous agreement, independent of, and not varying the written agreement, may be given in evidence, though it relates to the same subject-matter. Brown v. Bowen, 90 Mo. 190; Green v. Steele, 122 Mo. 287. (15) It may be asserted that

there was a conflict in the instructions; that the one given for plaintiff declared that the bank had no right to apply plaintiff's deposits to the payment of his note before its maturity, unless after the note was given there was an express agreement that such application should be made, while defendant's instruction told the jury, that if at the time the note was executed, or immediately thereafter, plaintiff directed the cashier of the bank to make that application of his deposits, and that they were so applied, he can not recover. If plaintiff's instruction was more favorable to him than he was entitled to, he can not complain or ask a new trial upon the ground of a conflict. Hahn v. Dawson, 134 Mo. 591; Reardon v. Railroad, 114 Mo. 405; Russell v. Receivers, 70 Mo. App. 80. (16) Plaintiff had the right to direct the cashier of the bank to apply his deposits upon the note, although the note had not matured at the time of such application, and if the bank consented to do so, and made the application under his direction, he can not complain. Gardiner v. Bank, 10 L. R. A. 45; Fisher v. Bank, 12 C. C. A. 411; Bank v. Green, 35 S. W. 911. The defendant's instruction announces the correct rule. If plaintiff directed the cashier of the bank to apply the deposits subsequently made as a credit upon his note, and his directions were followed by the officers of the bank he can not now be permitted to mulct the bank in damages for so doing. The instruction required the jury to find that plaintiff gave directions to the defendant to use the deposits in that way, and that they were so used in accordance with his instructions. If this was true, he is estopped to make any complaint of the action of the bank. Bunce v. Beck, 46 Mo. 333; Anthony v. Barlow, 69 Mo. 196; Walters v. Hamilton, 75 Mo. App. 249.

*Wm. Forman* and *D. E. Wray* for respondent.

(1) "Even though the lower court had given its reason for sustaining the motion for a new trial, and the reason given not

a valid one, yet if the court's action in granting the new trial can be sustained upon any other ground shown by the record and proceeding in the cause, the judgment must be affirmed." Bank v. Armstrong, 92 Mo. 265; Hewitt v. Steele, 118 Mo. 472. (2) The witness was surety on a note for plaintiff which note was held by Feaster. The testimony of Feaster, who was a witness for defendant, was that he wanted the money due him on the note about the time plaintiff's checks were protested. The purpose of the question was to ascertain whether or not Feaster's reason for demanding payment at that particular time was on account of the protesting of the checks. (3) The motion for costs filed by defendant was an admission on the part of defendant that plaintiff was insolvent at the time of trial. The court erred in excluding it. (4) The books of the bank were the best evidence as to whether or not the plaintiff was doing business with it at a particular time. The court erred in permitting the witness to testify over the objection of plaintiff. (5) The objection as to the contract made with the president should have been sustained. He had no authority to make such contract. Bank v. Hughes, 62 Mo. App. 576. The testimony of the president should have been excluded for the further reason that he had no authority to permit an overdraft, and such agreement was void. It is held that directors of a bank have no power to allow overdrafts, and that they sanction them, does not relieve the cashier or his sureties. An overdraft is a loan and the cashier of a bank who is a bonded officer, which the president is not, has no power or right to loan the money of the bank at will and without the usual precautions and formalities. Bank v. Stumpe, 2 Mo. App. 545. (6) The conversation between plaintiff and the president of the bank, about the kind of hogs plaintiff was to buy, should have been excluded. If his statement was true the bank was engaging in a business not sanctioned by its charter. R. S. 1899, sec. 1291. (7) The court erred in admitting the journal entry

showing that $267.71 had been applied on plaintiff's note. The note was the best evidence of such application. (8) The cashier of the bank could only appropriate the deposits and apply them upon the note by acting as the agent of plaintiff. He could not act as agent for both plaintiff and the bank. Smith v. Tyler, 57 Mo. App. 672; Chapman v. Currie, 51 Mo. App. 43; Burke v. Priest & Burke, 50 Mo. App. 312; Cox v. Bowling, 54 Mo. App. 289; Birge v. Bock, 44 Mo. App. 74. (9) Plaintiff denied that he directed the cashier to apply his deposits to the payment of the note. His checks were honored up to and including October 12, the day on which his passbook was balanced, showing a balance in favor of plaintiff in the sum of $267.71. The cashier, by paying checks after the date of the alleged agreement, ratified the action of plaintiff in revoking the agency, if any such agency existed. The court erred in giving the instruction.

SHERWOOD, P. J.—Action for damages to plaintiff's business and credit consequent on the refusal of defendant bank to pay certain checks drawn by plaintiff on it, notwithstanding plaintiff alleged he had funds in the bank subject thereto; five counts make up the petition.

Each count alleged plaintiff was a trader, his business being the buying of stock in Morgan and other counties, and he was a customer of defendant bank.

That in October, 1897, he drew a check upon said bank, which was duly presented and payment thereof refused by defendant and the check protested; that he had funds in the bank at the time subject to said check, and that the non-payment thereof resulted in serious damage to his business and credit, and that he was compelled to sacrifice his property to meet the demands of his creditors, in consequence thereof.

Each count alleged the non-payment of a separate check, which is fully described by the name of the payee, the date

and the amount thereof; and damages in the sum of five thousand dollars are claimed in each of said five counts.

The special defense relied upon in the answer is, in substance, that plaintiff made an arrangement in August, 1897, with the defendant to advance him money upon his checks to enable him to buy hogs suitable for the market; that the proceeds of the hogs, when sold by plaintiff, were to be deposited with the defendant to meet the overdraft thus created; that on or about September 23, 1897, his overdraft exceeded one thousand dollars, which was more than the bank was willing to carry, and its officers did not want the indebtedness to appear in that form, so they asked him to make a note for a part of the amount, and he gave his note for seven hundred and fifty dollars, due in thirty days, with William Callison, who was engaged as plaintiff's agent in selling the hogs, as surety thereon; that at the time the note was given, plaintiff had on hand a number of hogs, which he had bought with the money advanced by the bank; that plaintiff expressly directed the officers of the bank to credit on said note the proceeds of said hogs as the same should thereafter be deposited, from time to time, in said bank, notwithstanding the note might not be due at the time of such deposits; that the plaintiff sold the hogs and deposited the money in the bank, and, in accordance with his directions, the bank applied the same as a credit upon said note, and that when the checks were presented there was no money on hand subject thereto; that they were not paid for that reason.

The evidence tended to show that plaintiff had been trading in stock, and about August 1, 1897, applied to the president of the Bank of Versailles for money to enable him to buy _merchantable_ hogs. He at that time deposited $107. This seems to be the only money belonging to plaintiff, not arising from the proceeds of the hogs, ever deposited by him. It was agreed that the bank would advance money from time to time on his checks to enable him to purchase hogs suitable for the

market.   The hogs were to be delivered by plaintiff to his agent, one William Callison, and when sold by the latter, the money was to be deposited in the bank to meet the overdrafts created when they were purchased.   Plaintiff's overdraft on September 23, 1897, exceeded $1,000.   The cashier of the bank was unwilling to have the indebtedness continue to appear in that shape on the bank books, and requested plaintiff to give his note for a part of the amount.   A note for $750 was accordingly executed by plaintiff, with Callison as his surety.   It was payable thirty days after date.   Plaintiff then had a number of hogs which had not been sold.   Subsequently, about the fourth of October, the president of the bank told plaintiff not to buy any more hogs and to close up the business.

The defendant introduced evidence to the effect that, at the time the note was given, plaintiff expressly directed the cashier of the bank to apply the deposits that might be made from time to time, as the hogs should be sold, as a credit on the note, notwithstanding it might not be due when the sales were made, and that he repeated these directions to the president of the bank, when the latter directed him to close up the business about October 4, 1897.   Both the president and the cashier testified that this was the understanding and arrangement with the plaintiff, and the testimony of Mr. Callison corroborated their view of the matter.

On his part, plaintiff denied that he gave any such directions, or had any such agreement with the officers of the bank.

And it was testified by Dr. Woods, president of the bank, that on or about the fourth of October, plaintiff was at the bank and told Dr. Woods that he, plaintiff, had departed from the contract, by taking part of the hogs bought, and instead, as per contract, of turning them over to Callison, had taken them to Cooper county and sold them there, and that they were not such hogs as the president had agreed plaintiff

Vol 167 mo—27

might use the credit of the bank to pay for.    This statement of Dr. Woods was not denied by plaintiff.

There was evidence upon one part, that plaintiff's credit was injured by the protest of his checks, and that he made some sacrifice of his property, which he attributed to the action of defendant in refusing payment of such checks; and, upon the other hand, there was evidence that the only credit plaintiff ever had grew out of the fact that the bank was furnishing him the money to trade upon, and further that he sustained no loss by the selling of his personal property and the trading of his land for other property, as testified by him.

The court, at the instance of plaintiff, gave these instructions:

"The court instructs the jury that if they find for the plaintiff, in estimating the damages he has sustained by reason of the refusal of the defendant to pay his checks, they should give the plaintiff such temperate damages as they believe from the evidence would be a reasonable compensation for the injury he must have sustained by reason of the refusal of the defendants to pay plaintiff's checks; not to exceed, however, the sum of five thousand dollars on each count in plaintiff's petition.

"The court instructs the jury, that they are the sole and exclusive judges of the weight of the evidence and the credibility of the witnesses, and in determining the weight that should be given to the testimony of any witness in this case, they may take into consideration his interest in the result of this suit as well as his manner and deportment while giving his testimony.

"The court instructs the jury, that the defendant had no right to apply the deposit of the plaintiff to the payment of the note of plaintiff held by defendant, unless *after* the note was made and executed and before payment of the checks of plaintiff was refused by the defendant, there was an *express agreement* made and entered into between plaintiff and defendant, whereby it was agreed that the defendant should so

apply such deposit; and the burden is on the defendant to prove such agreement by a preponderance of the evidence, and unless it has so shown to the satisfaction of the jury, they should find for the plaintiff on each count of his petition, and assess his damages on each count at a sum not exceeding five thousand dollars."

These were all the instructions plaintiff asked, and to their giving, defendant excepted.

On its part, defendant bank asked and the court, over plaintiff's exceptions, gave these instructions:

"You are instructed, that if you believe and find from the evidence in this case, that the plaintiff executed and delivered to the defendant his promissory note for $750, dated September 23, 1897, and that the same was to meet a part of the overdraft previously made by the plaintiff, and that plaintiff instructed the cashier of the defendant at the time of the giving of said note, or immediately thereafter, to credit his said note with any money deposited in said bank to his credit, whether said note was due or not; and that afterwards and before the maturity of said note, the defendant did receive money from the plaintiff which was credited on said note, and that plaintiff had no other money in defendant bank at the time of the protest of said checks, then your verdict must be for the defendant.

"The court instructs the jury that although they may believe and find from the evidence that plaintiff had money on deposit in defendant bank at the time defendant caused said checks to be protested, yet if you further find from the evidence that plaintiff did not sustain any actual damages in his business as a stock trader and that he did not suffer loss of credit by reason of such refusal of defendant to pay his said checks, then your verdict can not be for more than nominal damages, but if payment of the check was wrongfully refused, then you should find your verdict for the plaintiff for nominal damages even though no actual damages have been proven."

The cause being submitted, the jury returned this verdict:

"We, the jury, find the issues for the defendant on each of the five counts in the petition."

Judgment entered of record in accordance with verdict of jury, and within proper time plaintiff filed his motion for new trial, as follows:

"Now comes the above plaintiff and moves the court to set aside the verdict and judgment in the above entitled cause rendered on the twenty-seventh day of April, 1898, and grant a new trial herein for the following reason:

"First, because said verdict is against the law, against the evidence, and against the law and the evidence.

"Second, because the court erred in admitting illegal and incompetent evidence on behalf of the defendant and over the objections of the plaintiff.

"Third, because the court refused to admit legal and proper evidence offered by the plaintiff.

"Fourth, because the court erred in giving illegal and improper instructions on behalf of the defendant and over the objections of the plaintiff.

"Fifth, because the court erred in refusing legal and proper instructions asked by the plaintiff.

"Sixth, because the verdict is against the weight of the evidence.

"Seventh, because the court erred in refusing to give a peremptory instruction at the close of the case directing a verdict for the plaintiff."

The court granted the motion for new trial, but did not specify of record the ground or grounds on which its action was bottomed, as the statute expressly requires.    [R. S. 1899, sec. 801.]

1.    As the trial court failed to specify the basis of its action, it would be highly improper for this court to assume that its action in granting the motion was based on any par-

ticular ground, and so the result of the action of the trial court in not obeying the statutory command, will be that the ruling of that court will have to be tried on the same basis and plan as prevailed in this State prior to the invention of the new statutory rule. Proceeding, then, on the old basis and familiar plan, it will be necessary to look into the correctness of the ruling of the lower court, first, in admitting or rejecting evidence; second, in giving instructions.

2. Relative to the first point, there were a number of objections taken by plaintiff regarding ruling on evidence, which will now be examined.

a. Plaintiff was asked as to the extent of the injury done him in his business by the refusal of the bank to honor his checks. On objection of defendant, this question was denied, but immediately thereafter, the same thread of thought and inquiry was pursued to its fullest extent, despite defendant's objections. The exclusion of evidence at one time coupled with its subsequent admission, can not constitute ground for complaint that prejudicial error has occurred. [Reardon v. Railroad, 114 Mo. loc. cit. 402; Hollmann v. Lange, 143 Mo. loc. cit. 107-8.]

A doctrine contrary to this was declared by this court in State v. Grate, 68 Mo. 22. But that case can not stand with the cases heretofore cited, and it should not be followed.

b. Cross-examining Lobban, defendant endeavored to ascertain what was the source of plaintiff's credit in doing business, so these questions were asked, and these answers returned:

"Q. Did you understand from any other source, any other way—did you get your information from any one that the credit he had in the stock business was on account of the Bank of Versailles furnishing money—funds to trade in stock with? A. I might have heard it indirectly, but I don't know.

"Q. Do you know now? A. No, sir.

"Q. And his credit in that community was based upon that fact—that the Bank of Versailles was furnishing him money ? A. It might have had something to do with it,' I don't know."

In reference to this matter, plaintiff says:

"Certainly it was an improper question. How he acquired his credit was not an issue."

In answering this criticism of plaintiff, respecting the court's admitting the witness to answer, as above stated, there are several answers.

First, the objection to the question was:

"I object to the question as incompetent, irrevelant and immaterial." Of such an objection, this court has said, for over *fifty years*, that it is *"no objection at all,"* and only equivalent, as Judge RYLAND said on one occasion, to saying, *"I object."*

From the numerous objections of this sort which appear in our records at every term of this court, it would seem that no amount of *catapultic* force would be sufficient to convey to the minds of practitioners the absolute and indispensable necessity of *specific* objections to the admission of improper evidence.

Second, there was no exception saved to either question or answer. So that, even if the objection to the question had been well taken, it would have availed naught, because no exception was taken upon the overruling of the objection.

Third, the answer of the witness showed a wholesale ignorance of the subject of inquiry, and, therefore, neither question nor answer could have worked plaintiff any hurt.

Fourth, each question and answer was *hearsay* pure and simple.

Fifth, what the witness "understood" was not evidence. [State v. Gritzner, 134 Mo. loc. cit. 525, and cas. cit.; State v. Hagan, 164 Mo. l. c. 672.]

c. Arnholt testified that he was surety for plaintiff on

a note to Dr. Feaster for $110.    Then this question was asked witness:

"Did Dr. Feaster say anything to Mr. Roe about his checks being protested, when the matter was fixed up ?"

Defendant's objection to this question prevailed, and properly prevailed.    If the conversation of Dr. Feaster and plaintiff were admissible in this case, then hearsay always is original and legitimate evidence.

d.    Relative to the ruling of the court in rejecting, when offered by plaintiff in evidence, the motion filed by defendant to rule plaintiff to security for costs, the declared object of so offering the motion being to show plaintiff was insolvent. On objection by defendant, this motion was held inadmissible. In their brief, plaintiff's counsel assert that this motion was admissible on the theory that it was an admission by defendant that plaintiff was insolvent.    True, but insolvent, when? Clearly *at the time of suit brought,* and not otherwise.

The gravamen of plaintiff's suit was the loss of credit plaintiff sustained, and the serious damage to his business, consequent on defendant's refusal to honor his checks, he having at the time funds in defendant bank on which he drew. Consequently, the subsequent insolvency of plaintiff bore no relevancy to the issue joined.    Besides, plaintiff was permitted to show his financial condition after the protest of his checks, and so no possible injury accrued to him, even if the trial court erred in ruling out the motion for costs, which ruling we hold was not error.

e.    It was entirely competent to prove by parol through the cashier, Stephens, that plaintiff had been *"doing business"* with the bank, prior to August 1, 1897.    No resort to defendant's books was necessary for that purpose.

The evidence was admissible on similar grounds to the instance where you may prove by parol, a person was *acting* as an officer, though you could not, *by parol, prove* he *was an officer.*

f.   Plaintiff's objection to Dr. Woods, the president, testifying that he made an agreement with plaintiff, whereby the latter was to get money from the bank, to buy a certain description of hogs, on the ground that the *president* could not contract for the bank to loan its money to a customer, had, in the circumstances here presented, no foundation in law. As was said by GANTT, P. J., when speaking as the organ of the court in Spark v. Dispatch Co., 104 Mo. loc. cit. 540:

"The president of a business corporation is its chief executive officer.   He may, without any special authority from the board of directors, perform all acts of an ordinary nature, which, by usage or necessity, are incident to his office, and may bind the corporation by contracts in matters arising in the usual course of business (Boone on Corp., sec. 144; Stokes v. Pottery Co., 46 N. J. L. 237)."

But apart from direct authority, owing to, and arising from, official position, it does not lie in plaintiff's mouth, after having borrowed the money from the bank, through the president, now to deny the authority of the president either to loan the money to him or to dictate the terms of such loan. If the plaintiff's position be correct, that the president had no authority to loan the bank's money, then it inevitably follows that plaintiff *never got the money from the bank at all,* and consequently, *had no money in the bank to draw on,* and therefore had no ground of action against *the bank* for not honoring his checks.   In other words, plaintiff's position on this point, if successful, would cause the bottom to drop out of his cause of action.   Not only is plaintiff estopped from pleading the president's lack of power in .this regard, but the *bank itself,* having let the plaintiff have its money, through the assumed agency of its president (if it was assumed) is also estopped to deny the legitimate nature of the loan.   And in the absence of countervailing evidence, inasmuch as the bank's books show the loan was made, it will be presumed that the nature and character and all the essential features of the

loan were made known to the bank, and as no disapproval by the bank of the loan appears, it will be presumed the bank approved of the loan in all points and particulars, for this is the ordinary presumption of law, and the usual course of business. [Long v. Joplin Mining Co., 68 Mo. 422; Breckenridge v. Ins. Co., 87 Mo. loc. cit. 71; Story on Agency, sec. 140; Lenox v. Harrison, 88 Mo. loc. cit. 496, and cas cit.]

And, on another ground, even if the act of the president were wholly unauthorized, that act can be upheld, and that is on the basis of ratification, which is as effectual against a corporation as against an individual in like circumstances, and tantamount to prior authorization. [Bank v. Fricke, 75 Mo. 178, and cas. cit.; Bank v. Gay, 63 Mo. 33.]

g. If Dr. Woods, the president, either in point of law, as being the executive officer of the bank, or through custom, or usage, or in consequence of ratification was, or became, authorized to make the contract with plaintiff about the hogs and the terms on which plaintiff could get the money, it was entirely competent to permit Dr. Woods to state what kind of hogs under the terms of the contract, plaintiff was to buy, as a condition of getting credit at the bank.

h. Error did not occur in admitting in evidence the entry from the journal, showing that $267.71 had been paid on the note for $750. The witness, Stephens, had already, without objection, testified to that fact. A payment can always be shown by parol, even though a receipt be given for such payment. But plaintiff objected to the journal entry showing payment on the ground that the note was the best evidence. The note, however, is not before us, and as it is not contained in defendant's abstract, though it appears it was identified by the witness, so it can not be ascertained whether there was a credit on the note or not. If plaintiff had desired to supply the omission in defendant's abstract, and make the note and its lack of a credit prominent, he should have complied with our rule 11 by filing an additional ab-

stract, covering the omission; but this could not be done by making a similar statement in a brief, as here attempted.

i. The testimony of Dr. Feaster as to plaintiff not being a good trader and to his not having as good credit as other men had, was received without objection by plaintiff, but it was moved by him to be stricken out. Under the ruling in State v. Marcks, 140 Mo. loc. cit. 668, unless testimony is admitted over a party's objection, it is too late, *afterwards*, to move its exclusion. But whether the trial court erred or not, in this ruling, is foreclosed from consideration by reason of the fact that no exceptions were saved thereto.

j. As to the deposition of Callison, offered by defendant in evidence, to this plaintiff objected and the objection was overruled; but as exception was not saved to this overruling, the point is not open for review.

And besides, as plaintiff states, "Callison did not testify to anything material to the issues in the case" there was, in any event, no occurrence of prejudicial error.

k. As to whether Dr. Feaster offered plaintiff to buy his claim against the bank was wholly immaterial and foreign to the issues joined, and so the objection to asking plaintiff in regard to Dr. Feaster making him such an offer was well taken, and so the court ruled. It is said by plaintiff that "Dr. Feaster had denied that he ever tried to buy plaintiff's claim against the bank, and the purpose was to impeach his testimony on this point." But such testimony, being on a *collateral* issue, on an *impertinent* matter, could not be offered for the purpose of impeachment. [Iron Mountain Bank v. Murdock, 62 Mo. loc. cit. 75, and cas. cit.] Besides, there was no exception saved to this ruling.

l. It was entirely discretionary with the trial court whether Stephens, after the evidence was closed, should be permitted again to occupy the witness stand. [State v. Smith, 80 Mo. 516; Jackson v. Railroad, 118 Mo. 199; Collins v. Lumber Co., 128 Mo. 451; State v. Eisenhour, 132 Mo. 140.]

m.    Parol evidence was competent to show that *at the time* the note was given, plaintiff directed any deposit he might thereafter make should be credited on the note although before its maturity, did not in the least vary or contradict the *note*.    The rule which prohibits the introduction of parol contemporaneous evidence, does not apply where there is offered in evidence a distinct collateral contemporaneous agreement, independent of and not varying the written agreement, though it relates to the same subject-matter.    [Brown v. Bowen,.90 Mo. loc. cit. 190, and cas. cit.; Greening v. Steele, 122 Mo. 287:]

These observations are also sufficient to cover and combat objection to Dr. Woods' testimony.    It was not necessary, for reasons already given, that such an agreement should be *in writing*.    And no exception was noted to the latter ruling, and the court did not pass on the former objection, as to which Brown v. Bowen has been cited.

Having thus discussed the court's rulings as to the admission or rejection of evidence, we hold no reversible error occurred as to such admission or rejection.

3.    We now pass to the consideration of the instructions. If the remarks hereinbefore made are correct as to the admissibility of evidence regarding a parol agreement executed contemporaneously with the execution of the note, then the instruction on this point, given at defendant's instance, was right; and that given for plaintiff,. which asserts that defendant had no right to apply the deposits, unless *after* the note was executed, there was an express agreement between the parties that the deposits might be applied before maturity of the note, was wrong.

These instructions evidently *can not stand together*.    Under the ruling in Bluedorn v. Railroad, 108 Mo. 439, if plaintiff's instructions are correct in every point and particular, and he recover in the court below, and the defendant's instructions are given, though incorrect, and he appeals, *this will*

*authorize a reversal,* though caused by *defendant's self-invited error.* If this ruling had continued to be the law, then plaintiff in this case, if an instruction in his behalf had been *erroneous* and that on part of defendant *entirely free from error,* could in all confidence rely on an affirmance of the judgment or order granting a new trial, because, as is said in Bluedorn's case, *"it is reversible error to give conflicting instructions, no matter at whose instance they are given."*

In other words, a party in *fault* is in *better* condition than a party *free from fault,* and so long as the former can continue to stuff the record with error, so long he may continue to baffle the administration of the law and defiantly defeat the ends of justice.

But this preposterous ruling was not of long duration. It was smitten "hip and thigh" and overthrown in Baker v. Railroad, 122 Mo. 533. Similar rulings were also made in Christian v. Insurance Co., 143 Mo. loc. cit. 468, and State v. Cable, 117 Mo. loc. cit. 386. Under these later rulings, if plaintiff's instruction which necessitated the making of an express agreement about the use of deposits *after* the note was executed, was *wrong,* then this gives plaintiff no basis for an affirmance of the judgment, notwithstanding such instruction *was* in conflict with those given for defendant.

What already has been ruled in reference to the validity of a parol agreement made contemporaneously with the execution of the note, settles the correctness of defendant's instruction on this point, in its favor.

4. The parol agreement between Dr. Woods and plaintiff for the use of the deposits as fast as they came in, being valid, there can be no doubt as to the right of the cashier to obey plaintiff's directions in this regard.

Plaintiff had the undoubted right to give directions as to how his deposits should be applied, and these directions being given, under a previously made agreement and the deposits applied as directed, plaintiff is clearly estopped from taking

any course opposed to his previous agreement and directions. [Bunce, Admr., v. Beck, 46 Mo. 333; Guffey v. O'Reiley, 88 Mo. loc. cit. 429.]

Finding no error in admitting or excluding evidence and no prejudicial error in giving instructions, of which plaintiff can complain, we reverse the judgment and remand the cause with directions to the lower court to enter judgment on the verdict. All concur.