FRANKLIN BRANCH AND EDWARD A. CLARK, APPELLANTS, VS. WILLIAM R. WILSON, APPELLEE.

1. Where a verdict is clearly against evidence, or clearly in disregard of preponderating evidence, it will be set aside and a new trial granted.

2. Where upon a sale of property, a note being given for the price, and a bill of sale given in terms conveying the present title to the property, yet if there be a subsequent independent agreement to deliver the property sold at a future time, and the seller refuses or fails to deliver the property, the defendant may avail himself of these circumstances to defeat a recovery, upon suit brought by the payee upon the note.

544 SUPREME COURT.

Franklin Branch and Edw. A. Clark vs. Wm. R. Wilson—Opinion of Court.

Appeal from the Circuit Court for Hillsborough county.
The case is fully stated in the opinion of the court.

*Papy & Peeler*, for Appellants.

*John A. Henderson*, for Appellee.

HART, Justice, being disqualified, this case was heard by the other members of the court.

RANDALL, C. J., delivered the opinion of the court:

William P. Wilson, plaintiff in the court below, brought an action of assumpsit against the appellants in 1866, upon a promissory note, of which the following is a copy:

" One day after date we, or either of us, promise to pay William P. Wilson, or bearer, the sum of five thousand dollars for his negro woman Anna, and her four children, this 12th day of September, 1863.                                    F. BRANCH,
                                                                             E. A. CLARK.

The declaration contains three counts: 1. Upon the note. 2. For price and value of the negro woman and her four children. 3. Upon account stated.

The defendant pleaded: 1. General issue. 2. Want of consideration; alleging that the negroes mentioned were never delivered. 3. That the currency contemplated in payment of the contract was Confederate bonds. 4. The defendant afterwards filed an additional plea, alleging that the delivery of the woman and children was a condition precedent to the plaintiff's right of recovery, and it was not complete until such delivery; that defendant demanded delivery at the time and place appointed for delivery, but that plaintiff failed to deliver, &c.

The plaintiff joined issue upon the pleas. A verdict was given in favor of the plaintiff, and his damages assessed at $2823.07, and the defendants moved for a new trial, which was refused, and the defendants appealed.

The plaintiff introduces in evidence the note above mentioned, and also a bill of sale of the negroes, whereby the plaintiff "granted, bargained, sold and confirmed" to the defendant, Branch, the said negro woman and her children, and agreed to warrant and defend said negroes to the defendant against himself and all other persons; which was signed and sealed by plaintiff, September 12, 1863.

The plaintiff having rested his case, the defendants introduced as a witness C. R. Mobley, who testified that the note and bill of sale were given in his presence, and he witnessed the latter. Branch and Wilson were at witness's store at the time. Branch asked for paper to draw a bill of sale, and was furnished a form-book. He wrote from the form-book until he came to the word "delivered," then turned to Wilson and said: "If the negroes are to be delivered, and I am to take immediate possession now, I will put in the word 'delivered;' if I cannot get possession now, I will not put it in." Wilson became excited and said: "I cannot deliver them now"—was moving his effects, and the woman was not well. Branch said he was afraid to leave them there, as they might run away to the Yankees. Wilson said he would risk all that; that there was not a particle of danger of that; he would have them there by Monday evening, to be delivered on Tuesday morning, at the house where Mobley was then living. Branch wanted to take home a little girl for a nurse. Wilson said he would not part them, but would deliver them as a whole in Tampa, at Mobley's drug store. Mobley testifies he was at home on Monday and Tuesday following. Branch came on Tuesday. The negroes were not delivered. Heard Branch say to Wilson on Tuesday that he came to demand the negroes. Wilson replied: "It's of no use to demand the negroes, he knew they were gone away—they were gone to the Yankees, and Branch could not get what he did not have." The note was given on the Saturday previous, and is pretty sure it was near six o'clock when the contract was made. Branch handed the note to Wilson and said he would send

for the Confederate bonds as soon as possible and pay the note.

William T. Haskins, for defendant, testified: Dr. Branch and I were walking down the street and met Wilson. Dr. Branch remarked, he "would like to get those negroes this morning.' Wilson replied: "They are gone." Dr. Branch said: "But you know that you were to deliver them this morning." Wilson said: "I can't help it—they are gone."

J. S. Haygood, for defendant, testified: Knows the negroes mentioned in the note. Met Wilson on Monday morning. He said his negroes had gone to the Yankees. Heard Wilson say he was to deliver them on Tuesday.

John T. Givens, for defendant, testified that he heard Wilson say substantially the same thing as to his negroes having all gone.

Henry Ferris, for defendant, testified that he was present on Monday morning at a conversation between Dr. Branch and Wilson. Wilson said: "All my negroes are gone; they went last night." "Dr. Branch didn't seem excited at all."

Wm. P. Wilson, plaintiff, testified that he sold Dr. Branch the negroes on the 8th September, 1863, for $5000. Money was not paid. Dr. Branch wanted me to keep them for him ten days; liked them and would take them, but might not get the bonds from Tallahassee in ten days. On Saturday, September 12, was at Mobley's store. The doctor said he was ready to settle for the negroes. I said, "Very well, you had better draw up a bill of sale." Mobley handed Dr. B. a form-book and paper, and he wrote the bill of sale. I signed it, and Branch gave the note. As I was going out he said: "Mr. Wilson, I have changed my mind; instead of your keeping them ten days, I will send my wagon on Tuesday morning, next, so I may bring their bedding and clothing and all of them." Said he came to town for the express purpose of taking Rachel home with him in the buggy, but on reflection thought he had better take them all together. I remarked, It was better not to separate them. All this occurred before three o'clock. After the trade I used

the same care with them as when they were mine. Went to town on Monday morning. After the trade and taking the note I never considered the negroes mine. Had several good offers for them, but would not sell. Went to Mr. Mobley's store and saw Dr. Branch. He took up a paper, and turning it around said: "You had better take this paper, it is no use to me." I said: "No, I prefer keeping your note." He told me he did not intend paying one cent of it.

Wm. B. Henderson and John T. Lesley, for plaintiff, testified as to the value of the negroes in September, 1863.

John Darling, for plaintiff, testified that Dr. Branch came into his store on one Saturday, and said he had purchased the negroes, and couldn't take them out because he didn't have his wagon there; was not going to take them till Tuesday.

Franklin Branch, defendant, testified: Went to Mr. Wilson's, examined the negroes; told him I thought they would suit my wife—would see her, and if she was satisfied with my representation of them I would be back on Saturday and take them at his price. He said Dr. McMickan thought the woman could not be safely moved for eight or ten days. I replied, if I purchased I should be my own judge as to the time of removing them. He said there were several persons wanting them. I requested him to keep them till Saturday, that I might have the refusal of them if they should suit my wife, to which he said he would let no one have them till Saturday. On Saturday met Mr. Wilson at Mobley's store, and told him I had come to buy the negroes. Handed him the note to see if it was satisfactory. He said I had better write a bill of sale. Wrote one from the form-book. Coming to the word "delivered" in the form-book, I said to Wilson: I cannot introduce the word "delivered," for the negroes are not yet delivered. Mr. Wilson signed the bill of sale, and I stepped to the desk to fold it; he picked up the note and was putting it in his pocket. I said to him: "As you have my note, I now demand the delivery of the negroes." He became agitated, and said: "No, no, Dr. Branch, I cannot deliver

them now, my property would be all exposed," &c., and he would have to move first; that on Monday evening he would bring them over to my place occupied by Mr. Mobley, and deliver them to me on Tuesday morning. I replied, "I am not willing to do it—you live so near the line the Yankees may come up and carry them off, or they may run away." He replied, "That will be my risk, for I will deliver them to you on Tuesday morning;" would not deliver me the girl until he delivered all.

The above is the substance of the testimony. The appellant's counsel assign errors as follows:

The court below erred in overruling the motion for a new trial, because:

1. The verdict of the jury was against the instructions of the court.

2. It was contrary to the evidence.

3. It was not warranted by the evidence.

4. It was contrary to the principles of law applicable to the case.

5. It was against the weight of evidence.

It is contended on the part of the appellee, that all the terms of the sale were complied with on the part of the appellee; that the giving of the note for the price, and the execution and delivery of the bill of sale conveying his right and interest in the property and warranting the title, was a completion of the sale of the property so as to vest the title and immediate right of possession in the purchaser, and that the seller's actual possession thereafter was that of a bailee of the purchaser, and that the jury having passed upon all the facts, the verdict should not be disturbed.

On the other hand the appellant contends that the point of delivery was a vital point in the case, and that the jury must have disregarded the whole of the oral testimony of the defendant's witnesses; that the matter of the delivery was the subject of arrangement entirely distinct from the note and the bill of sale, was purposely left out of that part of the contract, and

was the subject of entirely separate negotiation between the parties; that the plaintiff agreed to deliver the negroes at a future day, expressly taking the risk of loss until a delivery at a future day; that he failed to deliver on the day appointed, and that the purchaser had no right or power to take actual possession, and could not maintain an action for such possession until the time agreed upon for delivery by virtue of the bill of sale and agreement, and that such failure to deliver was a failure of the consideration of said note; or that the consideration expressed in said note not having been delivered by the plaintiff, in pursuance of the bargain and sale, there was in fact no consideration for the note.

The testimony of Mobley and Branch shows that that part of the contract relating to the time of delivery was purposely omitted from the bill of sale, and afterwards made the subject of a separate arrangement after the execution of the note and bill of sale, the plaintiff expressly refusing to deliver at the time, but agreeing to deliver at a given subsequent time and place. Mr. Wilson does not expressly contradict their testimony, but gives a narration of what occurred somewhat inconsistent with theirs in some respects; and on the following Monday and Tuesday, after the plaintiff alleged that the negroes had gone beyond his reach, the plaintiff not only did not claim that the property had passed by the sale, but spoke of *his* negroes having gone. The testimony of Mobley, Haskins, Haygood, Givens, Ferris, and Branch all goes to show that the plaintiff regarded the negroes as his own at the time of their loss.   Mobley, Haygood, Haskins, and Branch prove very conclusively that the plaintiff had agreed to deliver on Tuesday, and Mobley and Branch say that he expressly refused to deliver the negroes after the writings were exchanged, and said that he could not deliver them then, and they would remain where they were at his (plaintiff's) risk until the time of delivery fixed upon by him.

The time for the performance of the condition of a sealed as well as a simple contract, may be enlarged by parol.  1 Esp. N.

P., 35; Dearborn vs. Cross, 7 Cowen, 48; Fleming vs. Gilbert, 3 Johns., 528.

An independent substantive agreement connected with the subject matter of the contract, may be proved by parol. Cobb vs. O'Neal, 2 Sneed, 442; Leinan vs. Smart, 11 Humph., 308; 2 Stark. Ev., 551–5.

The consideration of the note in suit was the sale and delivery of the property. The note was delivered, and the property was to be delivered at a subsequent time, by the terms of the arrangement. The delay in the fact of delivery was, according to the positive testimony, not expressly contradicted, a delay sought and insisted upon by the plaintiff, and for his express benefit and convenience. Indeed he absolutely refused to make delivery at the time, and at the time appointed made excuses for non-delivery, and wholly failed to do so.

In Massachusetts it has lately been held (97 Mass., 166) that in an action on a note by the payee against the maker, the defendant may recoup damages caused by the plaintiff's depriving him of part of the consideration of the note. Parsons on Contracts, 246, says: "*Recoupment* we consider to belong rather to cases where the same contract lays mutual duties and obligations on the two parties, and one seeking remedy for a breach of duty by the second, the second meets the demand by a claim for a breach of duty against the first."

If the plaintiff sue on one part of a contract consisting of mutual stipulations made at the same time, and relating to the same subject matter, the defendant may recoup damages arising from the breach of another part; and this whether the different parts are contained in one instrument or in several, and whether one part is in writing and the other by parol. Batterman vs. Pierce, 3 Hill, 171; Ives vs. Van Epps, 22 Wend., 155.

There is a natural equity, especially as to claims arising out of the same transaction, that one claim should compensate the other. This principle is now almost universally adopted in the common law courts, instead of compelling the defendant to

resort to his cross action for any damages he may sustain by the act or omission of the other party with reference to the subject matter of the contract.

It seems to me that the jury in this case must have entirely disregarded the testimony, or clearly to have decided against the strong preponderance of testimony, in regard to the agreement concerning the delivery of the negroes; and to have decided it solely with regard to the supposed legal effect of the bill of sale, keeping out of view the fact which appears to be shown, that the plaintiff refused to make a present delivery (after the signing and delivery of the note and bill of sale) of the negroes for which the note was given, and expressly assumed the risk of the loss which subsequently occurred. If this be true, the plaintiff is seeking to compel the defendant to pay him for property sold, which he at the time refused to deliver, and was afterwards unable to deliver for causes beyond the control of the defendant. In this aspect of the case we are disposed to direct that the facts be again submitted to a jury.

Where there is conflicting testimony, and the verdict seems to have been given against evidence or in clear disregard of strong preponderating evidence, it will be set aside; and in Sanderson vs. Hagan, 7 Fla., 318, the court say it is its imperative duty to set it aside and grant a new trial.

The judgment is reversed and a new trial awarded.