113 So.2d 593 (1959)
B.F. GOODRICH COMPANY, a foreign corporation, Appellant,
v.
James A. BROOKS, Appellee.
No. 1092.
District Court of Appeal of Florida. Second District.
July 8, 1959.
Neal D. Huebsch, Eustis, for appellant.
Joseph E. Johnston, Jr., and E.S. MacKenzie, Brooksville, for appellee.
ALLEN, Chief Judge.
Appellant was the plaintiff in the lower court and appellee was the defendant.
Plaintiff filed a suit alleging that defendant was indebted to plaintiff on ten promissory notes totaling $5,665.88 plus interest and sought attorney's fees and costs. The *594 defendant answered and filed a set-off and counterclaim which after several amendments was set for hearing upon plaintiff's motion for summary judgment which was denied by Circuit Judge, D.R. Smith, on January 17, 1958. Thereafter, on September 10, 1958, the cause came to trial. The jury brought in a verdict in favor of plaintiff for $1,167.46 and a final judgment was entered thereon on November 18, 1958. Motion for a new trial was denied on November 7, 1958. Plaintiff then filed this appeal on January 10, 1959.
On May 8, 1956, the plaintiff entered into a consignment agreement with the defendant, their dealer at Brooksville, in an effort to correct the delinquent condition of accounts between plaintiff and defendant. Subsequent thereto additional stock was furnished defendant by plaintiff on consignment. This consignment arrangement failed to work out the financial troubles of defendant and on January 18, 1957, ten promissory notes in the total amount of $4,829.93 were executed by the defendant to the plaintiff. Within a few days after the execution of the notes, the plaintiff informed the defendant that he would be entitled to credits and adjustments on prior transactions between the parties which could be used to help meet the note payments. A dispute arose as to the amounts due defendant for these credits and adjustments and because of this dispute defendant refused to make further payments on the notes. The notes were in default, payment was demanded by plaintiff, and thereafter this suit was commenced by plaintiff on the notes. An answer and counterclaim and set-off were filed by the defendant after which a motion for summary judgment was made by the plaintiff. This motion was denied and the cause came on for a jury trial.
The transcript shows numerous transactions between the plaintiff corporation and its defendant franchise dealer. Due to the nature of the tire business, there arose question of: Allowances by defendant of adjustments made on defective tires to the customers of defendant; discounts alleged to have been promised defendant by plaintiff for meeting certain sales quotas; bonuses promised defendant by plaintiff's agents; and percentages of commission for warehousing tires for plaintiff. The defendant also testified that plaintiff billed him for merchandise that was covered by the consignment thus creating a double charge to defendant. Since plaintiff's suit was on the notes, its case in chief consisted of proving the execution of the notes. The defendant then proceeded on his set-off introducing testimony and evidence in support thereof. After totaling the sums under the set-off claimed by defendant, the balance due on the notes amounted to $890.80. The jury returned a verdict in favor of plaintiff for $890.80, plus costs and interest and attorney's fees resulting in a total amount of $1,167.46 from which plaintiff appeals.
The question involved in this case is the application of the parol evidence rule. The appellant cites J.M. Montgomery Roofing Company, Inc. v. Fred Howland, Inc., Fla., 98 So.2d 484 and 13 Fla.Jur. 383, for the principle that the terms of a written contract cannot be varied by oral agreement or extrinsic evidence made before or at the time of the execution of the instrument in question. This principle is not disputed by appellee who asserts that the facts of this case are governed by the Florida case of Payne v. Nicholson, 100 Fla. 1459, 131 So. 324, 326, and cases cited in the opinion of said case.
The set-off or counterclaim filed by the defendant was supported by several exhibits containing itemized entries of alleged credits due the defendant for return of merchandise; customer adjustments; discounts; warehousing fees; double charges; and other claims that had arisen between the parties between the time the consignment agreement was entered into and the date of suit. It will appear from the evidence before the jury that at the *595 time the notes in question were executed it was mutually understood between the parties that any and all credits due the defendant from plaintiff should be credited as payment against the amount due on the note. Apparently from the evidence the plaintiff did not deny this understanding, but objected on the basis that the defendant had either already received the credits or was not entitled to them.
In the case of Payne v. Nicholson, supra, the Supreme Court of Florida, in discussing whether oral testimony in support of a claimed set-off constituted an attempt to alter or vary the terms of the note, stated:
"As regards a promissory note, an extrinsic agreement as to the mode of payment, or the amount of payment, must be ineffective, since the parties have expressly dealt with those matters in the instrument; but an agreement to concede a credit or counterclaim, as offsetting the obligation of the instrument, would be a separate transaction, not dealt with in the instrument, and valid. Wigmore on Evidence, § 2444; Bennett v. Tillmon, 18 Mont. 28, 44 P. 80; Buckeye Cotton Oil Co. v. Malone, 33 Ga. App. 519, 126 S.E. 913; John Lucas & Co. v. Bradley, 4 Cir., 246 F. 693; Roe v. Bank of Versailles, 167 Mo. 406, 67 S.W. 303; Branch v. Wilson, 12 Fla. 543.
"Evidence of a parol agreement, made at the time of the execution of notes, that the maker should have the right to offset an account then existing in his favor, is not a variance from the contract embodied in the notes. Bennett v. Tillmon, supra."
The theory in the cases permitting set-off and oral testimony in support thereof is that this testimony rebuts the presumption of waiver which arises from the execution of the notes. The jury could have construed the testimony introduced in support thereof as collateral to, and independent of, the contract evidenced by the notes; thus the parol evidence rule would be inapplicable. See 71 A.L.R. 570 and cases summarized therein.
The application of the parol evidence rule has been a fruitful source of litigation. Jones on Evidence, Section 528, page 1025, states:
"It has been held to be permissible to show that the instrument in suit was obtained pursuant to an oral agreement by virtue of which a right of set-off or counterclaim exists, and that the obligation has been discharged by novation."
In 8 Am.Jur., Bills and Notes, Section 1073, the following appears:
"In cases where the right to a credit, counterclaim, or set off is claimed by the maker of a bill or note, the question whether the parol evidence rule precludes the admission of evidence to prove facts on which the claim may be based depends so largely on the particular circumstances that it is difficult to lay down any general rule."
Wigmore on Evidence, Vol. IX, Sec. 2436, states:
"An agreement of counter-claim or set-off, provided it is not in form or essence a mere qualification of the mode of payment specified in the document, may properly be established, for it concerns a separate obligation."
Wigmore further states in Sec. 2444:
"(a) (1.) An extrinsic agreement as to the mode of payment, or the amount of payment, must be, by the foregoing test, ineffective, since the parties have expressly dealt with those matters in the instrument. Although an agreement to concede a credit or counterclaim, as offsetting the obligation of the instrument, would be a separate transaction and therefore valid, yet the distinction between the two may sometimes be hard to draw."
*596 McCormick, in his works on Evidence, page 435, summarizes the experts' opinions as follows:
"Wigmore, after stating that this question of intent is for the judge  a proposition which in its frank and naked delegation of the decision of a fact-issue to the judge might cause uneasiness to traditional-minded courts  suggests, in tentative presumption-form, a formula which tends somewhat to narrow the fact-inquiry. He says:
"`In deciding upon this intent, the chief and most satisfactory index for the judge is found in the circumstance whether or not the particular element of the alleged extrinsic negotiation is dealt with at all in the writing. If it is mentioned, covered or dealt with in the writing, then presumably the writing was meant to represent all of the transaction on that element; if it is not, then probably the writing was not intended to embody that element of the negotiation.'
"Williston makes an extremely significant contribution by formulating a still more flexible and usable rubric, as follows:
"`The test of admissibility is much affected by the inherent probability of parties who contract under the circumstances in question, simultaneously making the agreement in writing which is before the court and also the alleged parol agreement. The point is not merely whether the court is convinced that the parties before it did in fact do this, but whether parties so situated generally would or might do so.'
"This, as will be observed, is given as a test of admissibility, that is, of action by the judge. This formula is paraphrased in the Contracts Restatement, which provides that the writing does not displace the oral agreement if the latter is not inconsistent with the writing and is such `as might naturally be made as a separate agreement by parties situated as were the parties to the written contract.'
"Corbin recognizes that the question whether the parties have assented to the writing as an integration is a question of fact, but he considers that the judge may either decide it himself, or may invoke `the aid of a jury's verdict.' * * *"
Dr. Morgan, in Vol. 2, Basic Problems of Evidence, American Law Institute, at page 341, states:
"Parol Evidence Rule-Contradiction
"Same  What is the Parol Evidence Rule? James Bradley Thayer did not attempt a precise definition. `* * * It is ordinarily said that in the case of contracts in writing, wills, deeds, and other solemn documents, parol evidence is not admissible to vary or add to their legal effect, or to cut it down; and especially that such evidence of the writer's intention is not admissible. In this expression, "parol" means what is extrinsic to the writing, and "evidence" means testimony or (of?) facts conceived of as tending to show what varies, adds to, or cuts down the writing, or to show the intention. The phrase parol, or extrinsic evidence stands contrasted with that intrinsic evidence which is found in the writing itself.'"
We are of the opinion that in this case the circuit court properly applied the rule of evidence.
We find no reversible error under the other points raised by the appellant.
Affirmed.
KANNER and SHANNON, JJ., concur.