ALLEN, Chief Judge.
Little River Bank and Trust Company, a Florida banking corporation, plaintiff below, appeals from a final judgment awarding plaintiff the balance owing on a note made by the appellee, defendant below, in the principal amount of $8,200.00 plus $262.-40 interest, less an offset of $7,275.27.
The note sued upon, dated July 1, 1963, and due July 31, 1963, called for the maker to pay a principal sum of $8,200.00 plus interest, which was determined to be $262.40. The original note was for $61,200.00 with interest at 6% per annum, dated April 5, 1960.
The principal question on appeal is whether the lower court erred in permitting the defendant to testify concerning transactions between the two parties on the grounds that such testimony, in violation of the parol evidence rule, was an attempt to use oral testimony to alter or vary the terms of a written instrument.
At the expense of being prolix, we believe the opinion of the trial judge, in which he details the factual situation that existed in this case, would show whether or not all the agreements could properly be included in a negotiable instrument. The opinion of the court below follows:
“This cause coming on to be heard upon the final hearing and the Court having heard various witnesses, the Court finds as follows:
“That a note in the amount of $8200.-00, together with $262.40 interest, was sued upon by the plaintiff, Little River Bank and Trust Company, a Florida banking corporation, by the maker of said note, North American Mortgage Corporation, an Arkansas corporation, for judgment on said note.
“There was conflicting testimony as to the allowance of interest paid, which is stipulated to be $7275.27 on the original and substituted notes from North American Mortgage Corporation, an Arkansas corporation, to Little River Bank and Trust Company, a Florida banking corporation.
“There is a dispute between the testimony of Martin Roess and the testimony of Mr. James A. Jackson and Mr. James G. Garner, Mr. Garner being the president of Little River Bank and Trust Company, a Florida banking corporation.
“A note in the amount of $61,200.00 was given by North American Mortgage Corporation, an Arkansas corporation, for six (6) notes and mortgages held by the Little River Bank and Trust Company, a Florida banking corporation, given by Aero Builders, Inc., for certain properties located in Pinellas County. That various notes were given to replace the original note of $61,200.00 and interest was paid on said notes by the North American Mortgage Corporation, an Arkansas corporation, at various times.
“That there appears to be one remaining property that has not been disposed of. The dispute arises in that Mr. Martin Roess claims that by oral agreement, in the event there was a loss on foreclosure and sale of property belonging to Aero Builders, that any interest paid by North American Mortgage Corporation, an Arkansas corporation, would be credited on the last payment to Little River Bank and Trust Company, a Florida banking corporation. Mr. Jackson and Mr. Garner claim that this was not the agreement. *265 This was not reduced to writing, except a memorandum made on April 11, 1960, by Mr. Martin Roess, which is defendant’s Exhibit No. 1, and sets out what Mr. Martin Roess understood the deal to be.
“It is amazing to this Court that these gentlemen, in dealing with $61,200.00 would not have a signed agreement setting out all the details of such a transaction, but, since this was not done, the Court finds that there was the amount of $8200.00 principal due on a note, together with interest to date, and that this cannot be varied by oral testimony, but that the Court finds that since Mr. Martin Roess did reduce to writing his impressions at the time said deal was made, this Court feels that Mr. Martin Roess’s memory as to the terms and conditions of said agreement would be more reliable than Mr. Garner’s or Mr. Jackson’s, and this oral agreement is merely as to payment and does not vary the amount of the written note.
“This is not imputing perjury to either of these gentlemen, as the Court feels that they are of the highest caliber, but that memories in the period of two to three years sometimes are faulty. It also appears that the various letters from North American Mortgage Corporation, an Arkansas corporation, to various people connected with Little River Bank and Trust Company, a Florida banking corporation, showed that there was some sort of an agreement between said parties as to getting credit for interest paid in the event there was a loss in foreclosing and selling Aero Builders property. This was not denied in answering letters from Little River Bank and Trust Company, a Florida banking corporation.
“There was a stipulation between the parties that the loss sustained by the North American Mortgage Corporation, an Arkansas corporation, did exceed $7275.27 on payment of the note in the amount of $8200.00, together with interest in the amount of $262.40.
“THEREFORE, the plaintiff is hereby directed to take a judgment giving credit for $7275.27 on the amount now due under said note, dated July 1, 1963.
“The defendant is hereby directed to pay court costs and an attorneys’ fee in the amount of $500.00.
“The plaintiff is instructed to prepare a final decree in accordance with this opinion.”
The final judgment provided:
“This cause coming on for Trial before the Court, and the Court having heard the testimony and other evidence of the respective parties, and the Court having made and filed its opinion herein; the Court having found for the Plaintiff on the cause alleged in its complaint; and the Court having found for the Defendant on its cause alleged in its Counter Claim; and the Court having assessed the Plaintiff’s damages, after offset by the Defendant’s Counter Claim, to be $1,687.-13, it is thereupon
“ORDERED AND ADJUDGED that the Plaintiff have and recover from the Defendant, NORTH AMERICAN MORTGAGE CORPORATION, the following sums:
Principal $8,200.00
Interest to January 9, 1964 262.40
$8,462.40
Less amount due Defendant
on its Counter Claim $7,275.27
$1,187.13
Attorneys’ fees 500.00
$1,687.13
together with the cost of this Court hereby taxed at $113.00, for all of which let execution issue.
“DONE AND ORDERED at St. Peters-burg, Florida, this 6th day of April, 1964.
s/ C. Richard Leavengood
Circuit Judge.”
*266 It is urged by the appellant that our Supreme Court, in Schwartz v. Zaconick, Fla.1953, 68 So.2d 173, precluded any agreement made contemporaneously with the execution and delivery of a note from being utilized to vary that instrument.
Schwartz held that an oral agreement made contemporaneously with the execution and delivery of a note and mortgage that as between the parties the interest requirements of the note were inoperative but in the event of a sale of the property, the interest payments were to be operative if the purchaser assumed the mortgage, was within the parol evidence rule, therefore ineffective.
The Court, in its opinion, stated:
ft * * * jn addition, he [the Special Master] found that there did in fact exist an oral agreement made contemporaneously with the execution and delivery of the note and mortgage, ‘that as between the parties, the interest requirements of the note were inoperative, but in the event of the sale of said property, such interest payments were to be operative in the event the purchaser assumed the mortgage.’ * * * ”
Later in the opinion, the Court further said:
“Our examination of the record discloses sufficient substantial evidence to support the Master’s findings on all questions of fact. We have considered all assignments of error and find no merit in them except that which challenges the recognition of the oral agreement with respect to interest, made contemporaneously with the execution and delivery of the note and mortgage. This is the only question left for us to decide and brings to us for consideration the ancient and familiar rule of exclusion that a contemporaneous oral agreement may not be availed of to vary the terms of a formal written instrument. The rule itself cannot be disputed, but appellees urge upon us that the oral agreement involved here is not excluded by the rule, and cites us to sections of Wigmore’s discussion of the subject beginning at section 2400 of Volume 9. Wigmore’s account deals with the difficulty the courts have sometimes experienced in the terminology and in the proper understanding and application of this familiar rule. The rule does not necessarily exclude extrinsic proof of the true consideration of an instrument, nor that its delivery is conditional, nor that there exists a contemporaneous independent agreement amounting to a separate transaction. Although the principle of the rule is settled, a consideration of its limitations has led more than one writer to say that ‘few things are darker or fuller of subtle difficulties.’ However, we encounter no such difficulty in the case before us. The note expressly provides for interest at six per cent payable semi-annually. The oral agreement seeks to impose a condition on that which is expressly unconditional by the terms of the instrument itself. With respect to negotiable instrument, Wigmore, in section 2444, says:
“‘(1) An extrinsic agreement as to the mode of payment, or the amount of payment, must be, by the foregoing test, ineffective, since the parties have expressly dealt with those matters in the instrument. Although an agreement to concede ■ a credit or counter claim, as offsetting the obligation of the instrument, would be a separate transaction and therefore valid, yet the distinction between the two may sometimes be hard to draw.
“ ‘(2) An extrinsic agreement as to the time of payment is for the same reason ineffectual; although an agreement of renewal, which may practically be equivalent, is in theory an agreement for an independent transaction and should be recognized. An agreement subjecting the obligation of the instrument to any condition or contingency, whether in time or otherwise, is ineffective, because the terms of a negotiable instrument are expressly unconditional; if it be said that *267 the law would not permit the condition to he inserted and that thus it must be extrinsic if at all, the answer is (according to the second canon above stated) that there would then have been no peculiar necessity for resorting to the form of a negotiable instrument.’ ”
The Court then states:
“Clearly the oral agreement involved here is excluded by the rule and cannot be given effect under any legal rule or principle cited to us. * * * ”
On rehearing, the Court then stated:
“Rehearing in this case was granted with argument confined to the question of whether parol evidence was admissible for the purpose of establishing a contemporaneous oral agreement that the makers of the note secured by the mortgage were not required to pay the interest as specified in said note.”
The majority of the court, thereupon, was of the opinion that the original decision should be adhered to, with Chief Justice Roberts dissenting.
We believe the factual situation in Schwartz to be different from that before the court in this case. The oral agreement was that the interest payments would be operative in the event a purchaser bought the property and assumed the mortgage. Otherwise, the interest requirements of the note would be void. In the instant case, the court found the principal amount of the note to be due plus interest, but allowed the full amount of the interest, $7,275.27, which had been paid on the series of notes, beginning with the note in the sum of $61,-200.00, dated April 5, 1960, as a setoff against the note. This setoff represented one-half of the loss sustained by the appel-lee in the purchase of certain notes of the Aero Builders.
Apparently, from the record, the appellee North American Mortgage Corporation, whose principal place of business was in St. Petersburg, was requested by Little River Bank and Trust Company, plaintiff below, appellant here, to purchase from the appellant three construction loan mortgages and notes secured thereby, which were in default. The appellee gave to the appellant its one note in an amount of $61,200.00, which was the amount of the defaulted loans due appellant with the further understanding, “that in the event there was a loss” the appellant would share the burden of such loss “to the extent of a sum equivalent to the sum of interest” paid by the appellee on its note given to the appellant in exchange for the delinquent notes and \nort-gages.
The collateral agreement in the instant case was not to waive interest as argued by the appellant, but to limit the possible loss to North American Mortgage Corporation through the foreclosure of the construction loans, purchases of the mortgaged properties, through foreclosure and sales of said properties to the extent of the amount of interest paid to the Little River Bank and Trust Company by North American Mortgage Corporation.
We believe that Payne v. Nicholson, hereinafter mentioned, more closely approaches the factual situation of this case now before us.
In Payne v. Nicholson, 1930, 100 Fla. 1459, 131 So. 324, the plaintiff and the defendant were co-partners under the firm name of Nicholson & Payne. The plaintiff sold to the defendant his one-half interest in the partnership business for $1500.00. The defendant paid the plaintiff $500.00 and gave to the plaintiff his two notes each in the sum of $500.00, one due and payable January 1, 1922, and the other January 1, 1924.
The defendant claimed that it was distinctly understood at the time the notes were delivered that an account, which the plaintiff owed to the partnership of Nicholson & Payne, should be credited upon the sum of $1500.00, and that the purchase price should be reduced by that amount; that the exact *268 amount owed by the plaintiff to the business was not known to either of the parties at the time of execution and delivery of said notes, but was later found to be $397.06.
On an action brought by the plaintiff against the defendant the defendant filed a claim to recoup on said last note the sum of $397.06. At the trial the court refused to admit in evidence a bill of sale from the plaintiff to the defendant covering an undivided one-half interest in the business of Nicholson & Payne and refused to permit Jhe introduction of the recoupment claimed of $397.06.
In its decision reversing the trial court, the Supreme Court said:
“As regards a promissory note, an extrinsic agreement as to the mode of payment, or the amount of payment, must be ineffective, since the parties have expressly dealt with those matters in the instrument; but an agreement to concede a credit or counterclaim, as offsetting the obligation of the instrument would be a separate transaction, not dealt with in the instrument, and valid. Wig-more on Evidence, § 2444; Bennett v. Tillmon, 18 Mont. 28, 44 P. 80; Buckeye Cotton Oil Co. v. Malone, 33 Ga.App. 519, 126 S.E. 913; John Lucas & Co. v. Bradley (C.C.A.) 246 F. 693; Roe v. Bank of Versailles, 167 Mo. 406, 67 S.W. 303; Branch v. Wilson, 12 Fla. 543.
“Evidence of a parol agreement, made at the time of the execution of notes, that the maker should have the right to offset an account then existing in his favor, is not a variance from the contract embodied in the notes. Bennett v. Tillmon, supra.
«* * *
“ ‘If the plaintiff sue on one part of a contract consisting of mutual stipulations made at the same time, and relating to the same subject matter, the defendant may recoup damages arising from the breach of another part; and this whether the different parts are contained in one instrument or in several, and whether one part is in writing and the other by parol.’ [7 Wait’s Actions & Defenses, 544] Branch v. Wilson, 12 Fla. 543, 550. See, also, 7 Wait’s Actions & Defenses 549.”
In the case of B. F. Goodrich Company v. Brooks, Fla.App.1959, 113 So.2d 593, we, in effect, held that where a franchise dealer executed promissory notes to manufacturer for amounts due and it appeared from the evidence that at the time the notes in question were executed it was mutually understood between the parties that any and all credits due the dealer from the manufacturer should be credited as payments as against amount due on notes, parol evidence was admissible as to credits due the dealer for the return of merchandise, customary adjustments, discounts, warehousing fees and double charges.
In Goodrich, we quoted from several authorities, beginning on page 595 :
“In 8 Am.Jur., Bills and Notes, Section 1073, the following appears:
“ ‘In cases where the right to a credit, counterclaim, or set off is claimed by the maker of a bill or note, the question whether the parol evidence rule precludes the admission of evidence to prove facts on which the claim may be based depends so largely on the particular circumstances that it is difficult to lay down any general rule.’
“Wigmore on Evidence, Vol. IX, Sec. 2436, states:
“ ‘An agreement of counter-claim or set-off, provided it is not in form or essence a mere qualification of the mode of payment specified in the document, may properly be established, for it concerns a separate obligation.’
“Wigmore further states in Sec. 2444:
“‘(a) (1.) An extrinsic agreement as to the mode of payment, or the amount of payment, must be, by the foregoing test, ineffective, since the parties have ex *269 pressly dealt with those matters in the instrument. Although an agreement to concede a credit or counterclaim, as offsetting the obligation of the instrument, would be a separate transaction and therefore valid, yet the distinction between the two may sometimes be hard to draw.”
Charles T. McCormick in his Horn-hook Series, Evidence, note 2, page 432, comments as follows:
“Greenleaf apparently first made this lion and lamb lie down together. As appears from the following passage, courts gladly repeated the miracle: ‘The rule is unquestioned that parol evidence is inadmissible to contradict or vary the terms of a valid written instrument: 1 Greenleaf, Evidence (16th ed. 1899) § 275. But it is equally well settled that the rule does not apply “in cases where the original contract was verbal and entire, and a part only of it was reduced to writing.” Ibid. § 284, a; * * *.’”
In Edens v. Duncan, Tex.1959, 331 S.W. 2d 810, the Court of Civil Appeals of Texas had a case in which the principle of law is very similar to the instant case. The following facts appear in the opinion of the court:
“Jewell C. Edens filed suit against M. L. Duncan and wife, Betty Grace Duncan, on a promissory note for $11,000.00 and for a foreclosure of a mechanic and ■materialman’s lien. The Duncans answered and alleged that prior to the ■execution of the note and the mechanic and materialman’s lien contract, Edens agreed to construct a house for the Dun-cans for the sum of $11,000.00 and that it was further agreed between the parties that Edens would accept an old house and lot as a credit on the note for $5,500.00.”
The Court in its opinion stated:
“The general rule is well established that parol evidence is not admissible to vary or contradict the terms of a written instrument but there are many well established exceptions which are as well established as the rule itself. One of these exceptions is that a prior or contemporaneous parol agreement to apply certain credits as payment on a written instrument is enforceable and may be shown by parol. ‘Such matters relate to the performance of a contract and do not vary nor contradict it.’ Dooley v. Gray, Tex.Civ.App., 54 S.W.2d 558. Our Supreme Court in the case of Hubacek v. Ennis State Bank [159 Tex. 166], 317 S.W.2d 30, cited Dooley v. Gray with approval.”
In the case of Paradise Beach Homes, Inc. v. South Atlantic Lbr. Co., Fla.App. 1960, 118 So.2d 825, the First District Court of Appeal, Judge Carroll writing the opinion for the Court, said:
“The simple statement of the parol evidence rule as set forth in the preceding paragraph may be misleading, however, unless one comprehends the numerous clarifications of and exceptions to this rule that have been recognized by the courts.
“Among the clarifications recognized by the courts in Florida are these: when the statement of a term, such as the consideration, in a written agreement is not a complete statement, parol evidence may be admissible as to that term, Jackson v. Parker, 1943, 153 Fla. 622, 15 So.2d 451; the parties to a written contract may prove by parol evidence facts consistent with the agreement, although not expressed in it, McNair & Wade Land Co. v. Adams, 1907, 54 Fla. 550, 45 So. 492; where a particular element of an alleged extrinsic negotiation is not dealt with in the writing, it is presumed that the writing does not represent the entire transaction, and parol evidence in proof thereof is admissible, Jackson v. Parker, 1943, 153 Fla. 622, 15 So.2d 451; parol evidence may be introduced to explain ambiguities or uncertainties in a written contract, McClure v. Century Estates, 1928, 96 Fla. 568, 120 So. 4.”
*270 Judge Sturgis of that Court in a concurring opinion stated, after referring to our case of B. F. Goodrich Company v. Brooks, supra:
“ * * * While there was testimony to the effect that the notes there sued on were given with the understanding that ‘any and all credits due the defendant from plaintiff should be credited as payments against the amount due on the notes’, the overriding fact is that these so-called ‘credits’ accrued to the benefit of the defendant independent of the note and thus constituted a proper subject for parol testimony in support of the counterclaim. Such testimony is in no sense in derogation of the written agreement expressed by the note. An agreement to concede a credit or counterclaim, as offsetting the obligation of a promissory note, is a separate transaction, not dealt with in the instrument, and valid. Payne v. Nicholson, 100 Fla. 1459, 131 So. 324, and cases cited in the opinion.”
Judge Wigginton also commented on the Goodrich case, as follows:
“Whether parol evidence is admissible to. establish a contemporaneous oral agreement between parties whereby the maker of a promissory note will be entitled to an offsetting credit against the amount recited in the note when the amount of such credit is thereafter determined, was extensively dealt with by the Second District Court of Appeal in the Goodrich case. No useful purpose would be served by recounting the authorities so extensively quoted in that opinion. It is sufficient to say that by its decision in the Goodrich case, the District Court of Appeal held that parol evidence is admissible for such purpose on the theory that the agreement with respect to the offsetting credits against the amount of indebtedness recited in a duly executed and delivered promissory note is a separate transaction which can be established by parol evidence. However, the integrity of the promissory note remains inviolate, and the terms thereof are not subject to alteration by parol evidence. It is my view that the Goodrich case controls the question now under consideration, and for the reasons stated in that opinion the final decree appealed from should be reversed and the cause remanded for further proceedings consistent with the views expressed herein.”
Smith, Contracts, Survey of Florida Law, 16 Miami L.Rev. 501, 521 (1962), states:
“Paradise Beach Homes, Inc. v. South Atl. Lumber Co. presents the most interesting analytical problem in the parol evidence cases in this period. The suit was one to foreclose a mortgage securing a negotiable promissory note, and was between the immediate parties to the note. The chancellor had excluded oral evidence of the circumstances under which the note was given. At the time the note was made and delivered, the maker owed the payee a debt for lumber, then uncertain in amount. The payee, needing money, asked the maker for the note and mortgage in suit, fixed in amount, to use as security for a loan. It was then orally agreed that if the mortgage was in excess of the amount actually owed by the maker for lumber, credit would be given the maker on the note and mortgage.
“There were three opinions in agreement that parol evidence was admissible. The majority and one judge saw in the evidence a conditional delivery, and followed the common law rule that conditional delivery, even of a negotiable instrument, may be shown by parol, holding that nothing in the Florida Negotiable Instruments Law precluded its application. The writer of the third opinion found an unconditional delivery, but would admit the oral evidence as a collateral (and unintegrated) agreement on the authority of the recent case of B. F. Goodrich, Inc. v. Brooks. The other judge con *271 curred to distinguish Goodrich, in that the agreement for off-setting credits in Goodrich arose from a completely different transaction, not the situation here.
“Corbin has commented on this case, preferring the opinion following Goodrich. ‘[W]holly apart from the parol evidence rule,’ he says, ‘it appears that the note was a valid contract, hut only to the extent of the debt that supported it. That debt * * * was only $1,588.77. There was no consideration of any kind for the promise to pay $4,714.96 other than the pre-existing debt. That debt would support the new promise, dollar for dollar, but not for one cent more.’ The holding of the third judge that the note and mortgage were unconditionally delivered and valid, and the evidence admissible to prove off-setting credits should be approved, he says, even though this ‘credit’ does not arise out of a collateral and independent transaction, because it shows both a mistake and partial invalidity of the express promise in the note.”
We conclude that the lower court properly allowed evidence of the agreement between the parties at the time the note was executed. The evidence showed the defendant would be permitted to offset, to the extent of the interest which had been paid, defendant’s share of the losses which the defendant incurred in foreclosing and disposing of the properties belonging to Aero Builders.
We not only affirm the court in awarding court costs in favor of the plaintiff, but also affirm the award of attorney fees, as the plaintiff recovered a judgment against the defendant on the note in question.
Affirmed.
PATTON, ROBERT W., Associate Judge, concurs.
HOBSON, J., dissents with opinion.