HOBSON, Judge
(dissenting).
The facts in the instant case are concisely set forth in the majority opinion; therefore it is not necessary to reiterate them.
Although I am in complete accord with the law as set forth in the majority opinion which is relied upon to affirm the final judgment of the lower court, I cannot agree that the facts of the instant case are such that this rule of law is applicable thereto.
In all of the cases and textbook law cited in the majority opinion the facts are such that the credit given to the maker of the note or notes in question arose out of an entirely separate transaction than the transaction dealt with and expressly and unconditionally set out in the instrument in question.
In the case of Payne v. Nicholson, 1930, 100 Fla. 1459, 131 So. 324, which the majority feels more closely approaches the factual situation of this case, it is clear that at the time the plaintiff sold to the defendant his one-half interest in the partnership business the plaintiff owed monies to the partnership on prior existing accounts, the amount of which was undetermined. It is certainly apparent in the Payne case that the credits owed the defendant as plaintiff’s partner by reason of said accounts arose out of entirely separate and distinct transactions not dealt with in the sale of the plaintiff’s one-half interest in the partnership to the defendant.
It is also true in B. F. Goodrich Company v. Brooks, Fla.App. 1959, 113 So.2d 593, and Paradise Beach Homes, Inc. v. South Atl. Lumber Co., Fla.App.1960, 118 So.2d 825, that the credit given to the maker of the note or notes sued on was credit existing but of undetermined amount at the time the note or notes in question were executed. Further the credit given to the maker arose out of entirely separate transactions than the transaction which was culminated by the execution of the express and unconditional note or notes.
*272 In my opinion the facts of the instant case are on all fours with those in the case of Schwartz v. Zaconick, Fla. 1953, 68 So. 2d 173. In the Schwartz case the Zaco-nicks were the makers of a note payable to Schwartz in the face amount of $7,000 with interest at 6% payable semi-annually. This note was secured by a mortgage given by the Zaconicks and contemporaneously with the execution and delivery of the note and mortgage the parties entered into an oral agreement whereby, as between the parties, the interest requirements of the note were inoperative, but in event of the sale of said property such interest payments were to be operative if the purchaser assumed the mortgage. The facts are clear that the oral agreement to concede a credit to the mortgagors, to-wit, the Zaconicks, arose out of the same transaction as did the note and mortgage. The Supreme Court of Florida in holding that the contemporaneous oral agreement may not be availed of to vary the terms of the formal note held on page 175 as follows:
“The note expressly provides for interest at six per cent payable semi-annually. The oral agreement seeks to impose a condition on that which is expressly unconditional by the terms of the instrument itself.”
A careful study of the facts in the instant, case discloses that the defendant-appellee purchased notes and mortgages from the plaintiff-appellant and as a consideration thereof gave the appellant its note bearing interest at the rate of 6% per annum. At the time of the delivery of the note, it was orally agreed that appellant would waive the interest thereon[1] to the extent that appel-lee might suffer a loss as a result of the purchase of the notes and mortgages. To give effect to the oral agreement relative to waiving interest would make the note conditional as to the payment of interest while the note on its face is absolute and unconditional as to such interest payment. The oral agreement in the instant case is an agreement arising out of the identical transaction which gave rise to the execution of the note being sued upon herein and cannot, in my opinion, in any way be construed to arise out of a separate transaction and thereby become admissible under the *273 law to vary the absolute and unconditional terms of the note.
I would, therefore, hold that under the law as set forth in the Schwartz case, supra, the oral agreement made contemporaneously with the execution and delivery of the absolute and unconditional note sued upon is not admissible to vary the terms of said note.
I would affirm the lower court in awarding court costs to the plaintiff but in view of my opinion that the defendant should not be allowed the credit which it had paid on interest in the amount of $7,275.27, I would affirm the award of attorney fees to the plaintiff but remand the cause as to the amount of said attorney fees.

. The majority opinion states “The collateral agreement in the instant ease was not to waive interest * * In the quoted opinion of the trial court it is stated:
“That there appears to be one remaining property that has not been disposed of. The dispute arises in that Mr. Martin Roess claims that by oral agreement, in the event there was a loss on foreclosure and sale of property belonging to Aero Builders, that any interest paid by North American Mortgage Corporation, an Arkansas corporation, would be credited on the last payment to Little River Bank and Trust Company, a Florida banking corporation. Mr. Jackson and Mr. Garner claim that this was not the agreement. This was not reduced to writing, except a memorandum made on April 11, 1960, by Mr. Martin Roess, which is defendant’s Exhibit No. 1, and sets out what Mr. Martin Roess understood the deal to he.'” [emphasis ours]
The memorandum which is Defendant’s Exhibit No. 1 and which the lower court held to be the oral agreement between the parties reads as follows:
“The deal wo made was this. The $2,-500.00 curtail would be applied on the back interest bringing the principal back up to $61,200.00. North American will execute a note for that amount for 6 months at 6%, and in the event the thing does not pay out interest, Mr. Bonner has agreed to waive interest on that 6% note, which will be dated April 5, 1960.
“We are to send the note from North American or he will send it to us, but when we send this memorandum there of this conversation, we are to send him forms of assignment so that the bank can assign the mortgages to Florida Lawyers Title Corporation, a corporation in which the foreclosure will be handled. In this way North American will not appear on the record in the transaction at all.
“It will be necessary to keep accounting on this so that we can determine what our position is at the termination of the entire transaction because only hy shoioing that we did completely hail out, we will have a basis to ask for a waiver of the interest.” [emphasis ours]